1840.

Tripp
v.
Vincent.

---

### Tripp vs. Vincent and others.

Upon a bill to foreclose a mortgage against two defendants who as copartners have a joint judgment against the mortgagor which is a lien upon the mortgaged premises, one of such defendants has no right to admit service of the subpœna upon his co defendant, upon whom it has not been served. And the latter, upon showing that he has a meritorious defence to the suit, is entitled to have the default against him founded upon such admissions set aside, if he applies immediately after he is informed of the irregularity.

The court of chancery has power to open a default and let in a defence to a suit upon the merits after a final decree therein has been entered and enrolled.

An appeal lies to the chancellor from an order of a vice chancellor made subsequent to a final decree in a cause.

March 17.

This was an appeal by Woodburn and Dey Ermond, two of the defendants, from a decision of the vice chancellor of the seventh circuit, denying their application to open a decree which had been taken against them by default, and to permit them to put in an answer and defend the suit. The bill was filed to foreclose a mortgage given to the complainant by D. H. Birdsall, and the appellants

were made parties to the suit as judgment creditors of Birdsall having a subsequent lien upon the mortgaged premises by virtue of their judgment. The subpœna was served upon Woodburn only, and he gave an admission of service to which he also signed the name of Dey Ermond, the other plaintiff in the judgment, but without authority from him. And Woodburn supposing the mortgage to be justly due, after consulting with his counsel, and being informed that it was not necessary for him to appear and answer in the suit, paid no attention to it until he afterwards ascertained, by the examination of the complainant as a witness in another suit, that his mortgage was fraudulent; or at least but a part of it was due, the residue being without consideration. The complainant's solicitor supposing that the subpœna had been served on Dey Ermond, and that he had signed the admission of service, entered an order to take the bill as confessed, against both the appellants; and obtained the usual decree for a foreclosure for the whole amount for which the mortgage was given. And the complainant was proceeding to sell the mortgaged premises under the decree, when he received notice of the appellant's application; the decree having been enrolled a few days before. The vice chancellor received the complainant's affidavit to contradict the appellants' affidavit of merits, and denied their application with costs.

*M. T. Reynolds & S. M. Woodruff*, for the appellants.

*Victory Birdseye*, for the respondent.

THE CHANCELLOR. The proceedings to take the bill as confessed against Dey Ermond were clearly irregular, as Woodburn was not authorized to admit service of the subpœna in his name. But if there had been no affidavit of merits in the case, I could not say that the vice chancellor, after decree, was absolutely bound to set aside the proceedings for an irregularity merely technical. It cannot properly be said, however, that there was any waiver of

the irregularity on the part of Dey Ermond ; as there is nothing in the papers to show that he had any knowledge of this suit, or of the admission of service made in his name, until the papers were made out for this application. Neither is it necessary in this case to inquire what would be the effect of the foreclosure of a mortgage against one of the plaintiffs in a joint judgment where the other was not made a party to the suit ; as I am satisfied both of the appellants should have been let in to defend this suit upon the merits.

The affidavits on the part of Woodburn and Dey Ermond are sufficient to show prima facie that this mortgage was given for the purpose of defrauding the creditors of the mortgagor ; or at least, that it ought not to be permitted to stand for any more than was actually due at the time it was given, and what was afterwards paid in good faith upon the $800 note.  And even if it was competent to receive the complainant's affidavit to contradict the affidavit of merits on the other side, upon such an application, he does not pretend he has ever paid a full consideration for the whole amount specified in the mortgage.  If he was honest in the whole transaction, and had no suspicion that Birdsall was embarrassed and was endeavoring to place his property beyond the reach of his creditors, yet no one can doubt, from what appears in these papers, that such was the intention of Birdsall himself.  And the complainant cannot therefore be considered as the bona fide mortgagee, without notice of the fraudulent intent of the mortgagor, for any thing more than the actual consideration paid by him, with the interest thereon.  Upon his own showing, then, he has gotten a decree for about $100 more than is equitably due upon the mortgage as against the creditors of Birdsall, together with the interest on the whole $800 note from February to May.  It is not usual, however, upon applications of this kind, to receive the affidavit of the adverse party to contradict an affidavit of merits ; as that would be to try the merits of the cause upon the contradictory statements of the parties

themselves instead of the testimony of disinterested witnesses. And laying the complainant's own ex parte affidavit out of view, I have very little doubt that the appellants, upon the hearing, will be able to establish by the witnesses such facts as to satisfy the court that the complainant himself had sufficient to apprise him that the object of Birdsall was to defraud his creditors. It appears that in February, 1838, for some reason which the complainant does not attempt to explain, he gave his note to Birdsall for $800 and interest, payable on demand, and that the latter at the same time gave back to him a mortgage upon his farm for $1000 and interest, also payable on demand ; the other $200 being, as he says, for a previous debt of about that sum. And by a reference to Frink's affidavit, it will be seen that this was about the same time that Frink found himself in embarrassed circumstances, so as not to be able to meet the debts of Birdsall and Frink which he had agreed to pay ; and when he gave the large judgment bond to Merrill & Kinney at random, without taking time to settle and ascertain what was actually due to them. The debt of the appellants had been contracted before that time, and was probably then in suit, as the judgment was obtained in the first week of the next term of the supreme court; about the same time when the complainant says he agreed with Birdsall that the latter should give up to him the $800 note upon receiving whatever money the complainant then had about him. With the money thus received, whether more or less, Birdsall soon after fled from the state. The complainant now says he has refreshed his mind by looking at an endorsement on the note, and that he had previously paid $200 thereon, although he did not recollect any thing of that when he was examined before the master. The whole of this transaction is so extraordinary and out of the usual course of honest business transactions, and has about it so many badges of fraud, that I think the vice chancellor should not only have let in the appellants to answer, for the purpose of reducing the decree to what was actually paid upon the $800 note, but also to make a

full defence for the purpose of showing the whole transaction fraudulent. But they should not be permitted to set up the defence of usury, even if there is any foundation for it, except so far as relates to any usurious premium which may have been received by the complainant or included in the mortgage.

The cases of *Beekman* v. *Peck*, (3 *John. Ch. Rep.* 415,) and of *Millspaugh* v. *McBride*, (7 *Paige's Rep.* 509,) show that the entry of a final decree or the enrolment thereof, even where there has been no irregularity in the case, forms no insurmountable obstacle to the opening of a default for the purpose of letting in a defence upon the merits.

The objection to the appeal upon the ground that the order appealed from is neither a final decree nor an order made previous to a final decree, is not well taken. The right of appeal to the chancellor from the decisions of the vice chancellors is given by the constitution, and does not depend upon the statute. (*Const. art.* 5, § 5.) And if an appeal from such an order is not embraced in the statutory provision limiting appeals from certain orders of the vice chancellors to fifteen days, as was contended for by the respondents' counsel, the party aggrieved by such an order may appeal therefrom after the expiration of the fifteen days; unless he is prevented from so doing by the rules or the practice of the court. Neither is there any foundation for the objection that it does not appear that the debt for which the judgment of the appellants was recovered was contracted previous to the giving of the mortgage, so that they could be defrauded thereby; as Frink swears it was contracted before the dissolution of the copartnership which must have been before this mortgage was given.

The affidavits of Frink and of the complainants' solicitor show that the appellants may probably reach one half of the potash lot by an execution on this judgment, as the legal title to one half of that lot is still in Birdsall, and therefore could not be reached by an execution on the judgment against Frink alone, under the provisions of the revised statutes. (1 *R. S.* 744, § 4.) And perhaps, at the

termination of a chancery suit with Petit, they might reach the other half; which was sold to pay what Frink insists was not equitably due on the judgment. It is very doubtful, however, whether they have any remedy as to that half. The short answer to all that is stated in the affidavits on that subject, or the subject of the assignment made by Frink for the benefit of his creditors, is that it does not distinctly appear, nor will it I presume be pretended, that the appellants have a clear and perfect remedy against property other than the mortgaged premises, either in the hands of the assignees or of any other person, sufficient to satisfy their whole judgment and costs, exclusive of all prior claims upon such property, and the necessary expenses of the litigation which will be necessary to satisfy their debt in that way. And after they had exhausted their remedy against the property of Frink, it would have been too late to apply to be let in to defend this suit for the purpose of preserving their lien upon the mortgaged premises.

The order appealed from must therefore be reversed, but without costs to either party. And an order must be made to set aside the order to take the bill as confessed against the appellant, and all subsequent proceedings as to them, and to set aside the decree and to discharge the enrolment thereof. They are also to have forty days after the service of a copy of the complainants' bill to answer the same, with the usual right to apply to the vice chancellor to extend the time, if necessary. But they are not to be at liberty in their answer to set up the defence of usury to the mortgage, unless they expressly waive any forfeiture on that ground, so far as relates to the money equitably due, and legal interest thereon. The appellants must also pay to the respondent his costs of entering the order to take the bill as confessed against them, and of all subsequent proceedings which will be rendered useless by this order, together with the costs of opposing the motion before the vice chancellor; which latter costs are not to exceed fifteen dollars. The costs to be paid within twenty days after service of the taxed bill.