# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MINNESOTA,

## IN JANUARY TERM, 1858.

————————◆————————

CASTNER & HINCKLEY, ET. AL. Appellants, *vs.* CHARLES SYMONDS, Respondent.

The Statute defining what shall constitute a *Levy* upon Real Estate changes the Common Law rule.

No Real-Estate can be sold under a Judgment-Lien until the requirements of the Statute in regard to a Levy have been fulfilled.

Where a Sheriff, in making a levy upon real-estate, did not go upon the premises, but went in sight of them, and did not leave a copy of the execution upon the premises nor with any one occupying the same, and did not demand payment,—HELD, That this was no Levy under our Statute.

The Sheriff's Certificate of Sale on Execution should be a statement of facts, and not of any conclusions of law he might form as to what constitutes a Levy.

The Sheriff's Certificate or Return should be conclusive in a case which involves the rights of third parties, who have relied on the judicial records of the county and have become purchasers in *good faith* and without laches: but otherwise, when parties have purchased with full knowledge of an illegal sale; in such cases the return can be disproved.

The Notice of Sale forms no part of the Sheriff's levy; the Levy must be complete before the advertisement of sale is made.

This was an Appeal from the final order and decree of the District Court of Ramsey County, made and entered in said cause by Hon. R. R. NELSON, Judge of said Court, sitting as a Court of Chancery.

The following is the Opinion of Judge NELSON, in the District Court:

NELSON, J. A bill for relief was filed and suit commenced for the Complainant, Symonds, on the 26th day of January, A. D. 1853, in the District Court for the County of Ramsey, against Castner & Hinckley. The Defendants, Castner & Hinckley, were allowed, on the 24th of October, 1853, to put in their joint and several answers after a decree *pro confesso* had been entered against them. On the 28th of November, 1856, by stipulation, Emmett & Moss were made parties defendants, and upon the 9th day of December 1856 filed their joint and several answers, and also served a cross bill, to which exceptions were taken by the Complainant in the original suit.

It appears that a judgment was rendered on the 8th day of May, 1852, against Charles Symonds and Daniel F. Brawley, in favor of John M. Castner and John S. Hinckley, for the sum of $121 74; that execution issued to the sheriff of Ramsey County on the judgment, in the usual form prescribed by statute; that the sheriff, on the 2d day of October, 1852, sold Lots Nos. 14 and 15, Block No. 33, in Rice & Irvine's Addition to the Town of St. Paul: and Lot No. 2 of Section 12, Township 28, Range 22,—being the property of the Complainant in this suit,—for the sum of $150: and on the 13th of November following made his return. It was admitted on the hearing, that the Sheriff, without leave of the Court, amended his return subsequently, by including the north-west quarter of the northeast quarter of Section 12, Township 28, Range 22, among the property sold by him. An affidavit is on file among the papers showing an attempt on the part of the Sheriff, on the 21st of February, 1853, to procure the assent of the Court to the amendment, but there is no evidence that the Court sanctioned the course adopted by the Sheriff.

Castner and Hinckley, the execution creditors, purchased the property sold by the Sheriff, and received a deed from him on the 6th day of December, 1843, after the time for redemption had expired. They subsequently, on the day of the commencement of this suit in equity, sold and conveyed the premises to Messrs. Emmett & Moss. An application by motion

was made to the District Court on the 22d day of January, 1853, by the Complainant, Symonds, to have the sale set aside, which was denied, but for what reason does not appear, no opinion having been filed by the Judge. A few days after this motion was denied, application was made by bill to the equity side of the Court for relief.

Two important questions present themselves in investigating this case :—

1st. Did the Sheriff *levy* on the property sold on the 2d day of November, 1852?

2d.   If there was no levy, can Emmett & Moss, the assignees or purchasers from Castner & Hinckley, hold the property?

Several minor questions were presented upon the argument, which, from the view we take of the case, it will be unnecessary to decide.

The whole gist of the proceedings is involved in the construction to be given the statute providing for the *levy* on real property under an execution.

If the levy was actually made so as to affect the property, the sale was legal, and the Plaintiff, Symonds, has no equity resulting from his own laches. The time for redemption had expired, and a tender of the money to the Sheriff was made one day too late.

The law providing for the levy on property by execution was taken from the Report of the New-York Commissioners, who framed a revised code of laws to the Legislature of that State in 1850. The provision defining what shall constitute a levy was a new one—entirely changing the common-law rule, and making it essential that certain well-defined acts should be performed by the sheriff before a levy should be complete. The seizure is a distinct act : and no real property can be sold by the Sheriff, although a judgment-lien existed, until the requirements of the statute are fulfilled.

In most States, a levy on lands has been the subject of judicial construction, but our statute expressly fixes the act or acts which constitute it. (*Sec.* 91, *p.* 363, *R. S.*) "All property "liable to an attachment is liable to execution : it must be *levied* "*on* in the same manner as similar property is *attached*. Until "a *levy*, property is not affected by the execution."

The statute in regard to attachments on real property provides that "a copy of the warrant, certified by the Sheriff, "must be left with the occupant of the premises, or, if there "be no occupant, in a conspicuous place thereon;"—*Revised Stat. sec. 140, p.* 346. And although this portion of the statute, when applied to executions, would seem to be merely declaratory to the sheriff, the last clause of section 91 clearly settles the question: "Until a levy, property is not affected by the execution."

It was contended by the Defendants' Counsel, that, judgments being a lien upon real estate, there was no reason for making the Sheriff perform any other act to complete a levy than advertising the property for sale. This position is fully sustained by the decisions in those States where the advertisement constitutes the levy, and no act is necessary to perfect it: but it will be found upon examining the statutes of most of the States, that an old rule has been materially changed, and certain statutory provisions have been made substantive requirements before a levy is perfected.

This change is certainly a good one, and relieves judgment-creditors from great embarrassment.

In proceedings where attachment has been obtained as a provisional remedy the statute provides that the judgment must be collected out of the property held by the warrant, and no formal levy by execution is necessary. If there should not be property enough to satisfy the judgment, the levy upon other property must be in accordance with section 140, page 346 Revised Statutes.

The testimony of Sheriff Brott shows clearly that he failed to comply with the statute. He says: "*In making the levy I* "*did not go upon the premises: I got in sight of it. I did* "*not leave a copy of the execution upon the premises nor with* "*any one occupying the same, and did not demand payment,*" &c.

This testimony was objected to before the referree—I suppose upon the ground that the return was conclusive. We do not think so: a sheriff's return is *prima facie* evidence of the facts stated therein, and his certificate would be so received. No particular form is prescribed for the return, but we think

that it would be within the spirit of the statute that he should be required to state the fact of a delivery of a copy, with day, hour, &c. to whom and where: as the necessity of such a return would always remind him of the acts to be done on making service.

The certificate should be a statement of facts and not of any conclusions of law he might form as to what constituted a levy. When the case involves the rights of third parties, who have relied on the judicial records of the county and have become purchasers in *good faith* and without laches, public policy would seem to require that the return should be conclusive, leaving the party to his remedy against the officer: but in other cases we think the return can be disproved.

Again: the judgment-lien, by our statute, runs against real property for ten years; the lien then ceases.

The time when a lien by actual levy on execution should attach becomes important often between creditors and otherwise. It would seem, therefore, to be a wise provision, making the ceremony of a levy a well-defined and distinct act, capable of being clearly identified, in place of the uncertain acts and intentions formerly required to show a *levy*, which it is nearly if not impossible to controvert against the Sheriff's official certificate.

The policy of denying judgment-liens for a longer period than ten years, unless an action is commenced on a judgment obtained upon the original judgment, may be perhaps very unquestionable; but one thing is certain: that in communities where numerous statutory liens against real property exist, the amount of money paid for searches far exceeds the money collected upon judgments. We have, therefore, arrived at the conclusion that no levy was made by the sheriff, and Castner & Hinckley derived no title to the property under the sale.

The sale was not merely irregular: it was *erroneous*; and no protection is offered to the purchaser from Castner, for the sheriff acted without authority. Emmett was the attorney of Castner & Hinckley in the suit upon which the judgment was obtained against Brawley & Symonds: was conversant with all their difficulties: signed the execution issued to the Sheriff, and is presumed to have instructed him in regard to the levy.

Moss, at the time of the purchase from Castner & Hinckley of the property in controversy, was either the law-partner of Emmett or was with him in the same office, and, it appears from the testimony of Mr. Rice, knew that proceedings were being commenced by Symonds to recover the property sold by the Sheriff. In fact, from his own testimony, it appears that he examined the records in the clerk's office, the return of the sheriff, and all the papers connected with the case. He was informed, therefore, of the motion which was made by Symonds to set aside the sale, and the grounds upon which the motion was based.

The affidavits are on file, and form a part of the records of the case. He was not a purchaser without full knowledge of the facts.

It is very doubtful if he could hold the property had he been a *bona fide* purchaser at the sheriff's sale.

The cases cited by the Defendants' Counsel apply where by judicial construction *notice of sale* is held to be the only levy upon lands. They are totally inapplicable under our statute, which defines what constitutes a levy upon real property, and that "until a levy, property is not affected by the execution." In those cases, an omission of the notice of sale is declared by statute not to affect a *bona fide* purchaser.

The notice of sale by our statute forms no part of the levy. The levy must be complete before the advertisement of sale is made, and an omission of the proceedings subsequent to the *levy* will not invalidate it where the interests of a *bona fide* purchaser are concerned.

Upon full examination, we are led to the conclusion that a decree must be entered in favor of the Complainants, in accordance with the prayer in the Bill.

The cause was brought on for argument at the January Term, 1858, of the Supreme Court: when the Counsel for Appellants submitted the following objections to the jurisdiction of the Court:

The Defendants in the action aforesaid come and object to the jurisdiction and authority of the Hon. WILLIAM H. WELCH

Castner & Hinckley *v.* Symonds.

and the Hon. R. R. Nelson, Justices of the Supreme Court of the late Territory of Minnesota to hear and determine the action aforesaid as a Supreme Court, and respectfully submit the following grounds for said jurisdictional objection :

*First.* That the Court aforesaid has been, by virtue of the adoption and ratification of the Constitution of the State of Minnesota with the consent and by authority of an act of Congress, superseded by the authorities and Courts of said State, and can only act as a United States District Court.

*Second.* That, by an act of the Legislature of the State of Minnesota, approved January 11th, 1858, the time for holding the Supreme Court is postponed, and the laws of the Territory aforesaid, providing for holding a term of the Supreme Court on the second Monday in January of each year, repealed.

*Third.* That the action aforesaid is carried by Appeal to the Supreme Court of the State of Minnesota, and not to the District Court of the United States aforesaid.

*Fourth.* That the papers and pleadings in said case were not certified to or filed in this Court until the 11th of January, 1858, and that the same were not so filed at the instance or by the consent of Defendants aforesaid.

*Fifth.* That the Judges of the Supreme and District Courts of the State of Minnesota heretofore elected have accepted their several offices, and are legally qualified to act as such.

*Sixth.* That due notice for the hearing of said action has not been given.

Whereupon, the said Defendants, without intending any disrespect to this Court or any Judge thereof, respectfully ask that the honorable Court will refuse to take jurisdiction of said case, and that this their objection to such jurisdiction may be filed, so that their legal rights may not be prejudiced in the premises.

Which objections were all overruled by the Court.

[The points and authorities of the Appellants are not on file.]

The following are the points and authorities relied upon by the Counsel for the Respondent:

28

*First.* The proceedings of the sheriff under the execution by which he affected to make title were irregular, and the sale void;

1. Because he did not resort to the personal property of the debtor first, although there was sufficient personal property in the possession of the debtor to satisfy the debt of which the sheriff had notice.

2. Because he gave no notice of the execution, and made no demand of payment to and on the debtor, or his agent on the premises.

3. Because there was no levy upon the property affected to be sold, and the execution never attached thereto.

4. Because no copy of the writ of execution was left upon the premises nor with any one occupying them, or served in any manner.

5. Because the return of the sheriff to the execution is void and inconclusive: in that it was altered and interpolated without authority, after the same was filed: in that it shows no resort to the personal property of the debtor first, to satisfy the debt, nor no levy, nor no acts constituting a levy in law, nor a sale of the property described in the answers of the Appellants and claimed by them; and is otherwise irregular and void.

6. Because the land was not sold in parcels.

*Second.* The sheriff's sale should be set aside upon equitable considerations:

1. Because the Defendants, Castner & Hinckley, being plaintiffs in the execution, should not in equity, under the circumstances, ask more than the payment of their debt or costs, or to be reimbursed for their bid, which amount has been tentered and paid into Court.

2. Because the Respondent was absent at the time of the issuance of the execution, and returned but a few days before the sale, and was prevented from attending the same by sickness.

3. Because he was misled as to the time of redemption, by the sheriff, to whom he applied.

4. Because the price bid was greatly inadequate.

5. Because the Respondent paid the amount required by the sheriff to him on the day which he understood was in time.

6. Because of the extreme hardship of the case.

7. Because the Appellants seek an unconscionable advantage.

*Third.* That the Defendants, Castner & Hinckley, being the plaintiffs in the execution, are affected in law by constructive notice of the irregularities in the proceedings and the equities of the Plaintiff; and the Defendants, Emmett & Moss, being their grantees, and having been the attorneys for the said Plaintiffs in the said execution, are in like manner affected by such constructive notice.

*Fourth.* That all of the Defendants were notified and informed, in point of fact, of the irregularities of said proceedings and of the rights and equities of the Plaintiff, before taking any title or claiming any estate in the land.

*Fifth.* That Emmett & Moss, the Defendants who claim title, are not *bona fide* purchasers for value.

Authorities: *Revised Statutes of Minnesota Territory*, sec. 82, *sub.* 71, *p.* 362; *sec.* 93, *chap.* 71, *p.* 363; *sec.* 91, *p.* 363, *chap.* 70; *sec.* 140, *p.* 346, *ch.* 71; *sec.* 108, *p.* 366, *appendix; sec.* 43, *p.* 12; "*Sheriffs,*" *p.* 66; *secs.* 111, 112, *ch.* 71, *p.* 366; *ch.* 82, *sec.* 14, *p.* 412; *chap.* 70, *sec.* 158, *p.* 319. *Gwynn on Sheriffs, pp.* 255–8, 211; *Dutton vs. Tracy,* 4 *Conn.* 356; *Green vs. Burk,* 23 *Wend.* 493; *Gantley's lessees vs. Ewing,* 3 *Howard's (S. C.) Rep.* 707; *McBurrie vs. Overstreet,* 8 "*B*" *Monroe's R.* 300; *Gwynn on Sheriffs,* 200; *Williams et al. vs. Reyton, lessee,* 4 *Wheat.* 77; 4 *Cond. R.* 395; *Stead's Ex'rs. vs. Couse,* 4 *Cranch,* 403; 2 *Pet. Conn. Rep.* 151, *and notes;* 11 *Wend.* 22; 2 *Humphrey's R.* 455; *Davies vs. Maynard,* 9 *Mass.* 242; *Lancaster vs. Pope,* 1 *Mass.* 86; *Williams vs. Armory,* 14 *Mass.* 20; *Willington vs. Gale,* 13 *Mass.* 483; *Curtis vs. Norton,* 1 *Humph.* 278; *Bowler vs. Bell,* 20 *Johns.* 338; *Weyland vs. Yipton,* 5 *S. R.* 232; *Lothrop vs. Abbot,* 4 *Shep.* 421; *Anderson vs. Carlisle,* 7 *How.* (*Miss.*) 408; *Morton vs. Walker, ibid,* 554; *Barbour's Ch. Pr. pp.* 74, 619, 627, 539, 540; *Davies vs. Maynard,* 9 *Mass. pp.* 246–7; *Eddy vs. Knapp,* 2 *Mass.* 154; *Meuns vs. Osgood,* 7 *Green.* 146; *Libby vs. Copp,* 3 *N. H.* 45; *Anderson vs. Cunningham, Minor,* 48; *Pound vs. Pullen,* 3 *Yerg.* 338; *Buckholder vs. Keller,* 2 *Barr,* 51; *Elliott vs. Doughty,* 7 *Black.* 199; *Sleeper vs. Newburg Seminary,* 19 *Vt.* 451; *Morton vs. Edwin,* 19 *Vt.* 77; *Peirse vs.*

*Strickland*, 26 *Maine*, 227 ; *Harrison vs. Dox, dem. of Rapp.* 2 *Blackf.* 1 ; *Simons vs. Catlin*, 2 *Caines*, 61 ; *Goodyer vs. Junce, Yelv.* 179 ; *Parsons vs. Lloyd*, 3 *Wils.* 341 ; *Read vs. Markle*, 3 *Johns.* 525 ; *Lawrence vs. Speed*, 2 *Bibb*, 401 ; *Hayden vs. Dunlop*, 3 *Bibb*, 216 ; *Lessee of Allen vs. Parish*, 3 *Ohio*, 187 ; *Lessee of Stall vs. McAllister*, 9 *Ohio*, 19 ; *Jackson ex dem.: Sanders, Sanders et al. vs. Caldwell*, 1 *Cow.* 641, 642 ; 1 *Barr's Prac.* 301–2 ; *Smith vs. Pope*, 5 "*B*," *Monroe*, 337 ; *Waite vs. Dolby*, 8 *Humph. Rep.* 406 ; *Barbour's Ch. Pr.* 539, 541 ; *Anderson vs. Youlk*, 2 *Harris & Gills*, 346 ; *Am. Ins. Co. vs. Oakley*, 9 *Paige*, 229 ; *Greele vs. Emery, in Chancery, New-York, cited in last authority; Millspaugh vs. McBride*, 7 *Paige*, 509 ; *Yupp vs. Vincent*, 8 *Paige*, 176 ; *Snyder vs. White*, 6 *How. Pr. R.* 321 ; *Regrea vs. Rea*, 2 *Paige*, 339 ; 1 *Story's Eq. Juris. sec.* 395, *p.* 422.

JAMES SMITH, JR. Counsel for Appellants.

H. J. HORN, with HOLLINSHEAD & BECKER, Counsel for Respondents.

The decree of the District Court was affirmed, but no further opinion was filed.