## James R. Herbert *vs.* Thomas Rowles.

*Practice in Equity—Opening a Decree after Enrolment—Bills of Review—Alien Enemy—Appeal—Sufficiency of Evidence to sustain Decree.*

As a general rule it is true that a decree once enrolled cannot be opened, except by a *bill of review*, or by an original bill, *for fraud.* To this rule, however, there are well founded exceptions, arising in cases not heard upon the merits, and in which it is alleged that the decree was entered by *mistake* or *surprise*, or under such circumstances as shall satisfy the Court, in the exercise of a sound discretion, that the enrolment ought to be discharged.

But where the case is submitted upon what the defendant deemed sufficient proof to disclose the merits of his defence, and the Court decrees adversely, his only remedy is by an appeal; or if the decree were by mistake, his claim before enrolment is undoubted.

The fact of being an alien enemy and thereby disqualified from appearing in person or by attorney, cannot avail a defendant, where the privilege of appearing by attorney was accorded to and availed of by him.

After a final decree in equity, it was ordered by the Court that the decree "be vacated and annulled, and that no execution shall issue thereon, and that the defendant have leave to file his answer," &c.; "unless cause to the contrary be shown," &c., Held:

That the time during which the decree was so suspended, was to be deducted in ascertaining the time within which an appeal would lie.

A purchased land from B, and gave him a mortgage for part of the purchase money. He subsequently filed a bill in equity against B, alleging a deficiency in the quantity of land sold, and asking that the amount of his indebtedness under the mortgage, after deducting the allowance for such deficiency, might be ascertained, and for a decree releasing the mortgage on payment of said balance. No evidence was offered of the state of the account between them, other than an admission of B's solicitor in the following words : " It is admitted that the amount of indebtedness in this cause is eight hundred and eighty-six dollars and forty-eight cents, said amount including interest to the 5th of June, 1865," and no sufficient evidence was offered to establish the fact of the deficiency claimed. The Court passed a decree directing B to execute to A a full release of the mortgage, and also to pay to him the above mentioned sum of $886.48, with interest. On appeal taken by B, Held:

That the evidence in the cause was altogether insufficient to sustain the decree.

APPEAL from the Circuit Court for Howard County, in Equity.

The bill in this case was filed on the 3d day of February, 1863, by the appellee. It set forth that Rowles contracted to buy a tract of land from Herbert, at $51.75 per acre, on the 4th of April, 1856; that the tract was believed and represented to contain 244½ acres; and that on that assumption the price was calculated at $12,652.88; that Rowles received a deed from Herbert, on the 3d day of October, 1856, having then paid all the purchase money except $2,826, for which latter amount he gave a mortgage of even date with the deed, to secure the payment of said sum with interest semi-annually. The bill charged that since the date of the deed, Rowles had paid on account of the mortgage debt, $1,350, on the 17th April, 1857.; $800, on the 15th February, 1860, and $500 on the 5th May, 1861, *leaving a balance still due to Herbert;*" that by a survey of the farm made *since October 3d,* 1856, the complainant had ascertained that there was a deficiency of nineteen acres in the quantity sold; and that Herbert left the State in 1861, and, at the present time resided in Virginia, or elsewhere, out of the jurisdiction of the Court.

The bill then prayed for an account of the mortgage debt, to ascertain the amount then due upon it, and that in stating the account allowance might be made for the deficiency, and that on payment by the complainant of the balance found due, Herbert should be decreed to release the mortgage, and for further and other relief.

An order of publication against Herbert as a non-resident was also prayed, and was passed on the same day. In the notice of the substance and object of the bill published under the order, the complainant stated that the object of his bill was *to precure a release of the mortgage upon payment by him of the balance that might be found due thereon, after allowing for the deficiency.*

The order was published, warning Herbert to appear on or before June 10th, 1863. On the 11th of September, an inter-

locutory decree was passed, and a commission ordered to be' issued to the regular commissioner of the Court to take testimony. The evidence taken under this commission is sufficiently stated in the opinion of the Court.

After the return of the commission, which was the 30th July, 1864, nothing was done until the 9th day of June, 1865, when Samuel Snowden appeared as solicitor for James R. Herbert, and filed a paper in the following words:

"Rowles
   *vs.*   } In the Circuit Court for Howard Co. in Equity.
Herbert.

"It is admitted that the amount of indebtedness in this cause, is eight hundred and eighty-six dollars and forty-eight cents, said amount including interest to the 6th June, 1865."

On the 5th day of July, 1865, the Court passed a decree, based upon the foregoing proceedings, directing Herbert to execute a release of the mortgage, and to pay Rowles $886.$\frac{48}{100}$, with interest from June 5th, 1865, until paid.

On the 26th of April, the defendant, Herbert, filed a petition for leave to answer the bill, based on facts and reasons set forth in the petition. And the Court thereupon passed an order permitting him to answer, unless cause to the contrary was shown on or before the 22d of May. Before the matter of the petition was heard, the defendant filed an amended petition, upon which the Court passed an order dated June 13th, 1866, directing that the decree passed on the 5th of July, 1865, "be vacated and annulled, and that no execution shall issue thereon, and that the defendant have leave to file his answer to the original bill in said cause unless cause to the contrary be shown on or before Monday, the 2d day of July, 1866," &c.

The petition and amended petition to which the complainant filed answers, came on to be heard together, and

on the 15th of June, 1867, the Court passed an order dismissing the petitions with costs; and on the 13th of July, 1867, the defendant took this appeal from said order and from the original decree; accompanying his order for the appeal, with an affidavit, which stated (among other things,) that the "said decree was obtained through the mistake of the complainant, as set forth in the petition and amended petition filed in this case."

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER, ALVEY and ROBINSON, J.

*William A. Fisher* and *Charles Marshall*, for the appellant:

The appeal from the decree in the original cause was taken more than nine months after the date of the decree, but not after it was actually filed. The affidavit that the decree was obtained by mistake is, however, conclusive on the right of Herbert, to appeal. *Oliver vs. Palmer and Hamilton*, 11 G. & J., 141; *Code, Art. 5, sec.* 20.

The affidavit referred to the petition and amended petition to show what the mistake was. Though it was unnecessary to do this, it is important to observe that the papers referred to, fix *the time when* the mistake was discoverd by the appellant. It appears that the appellant was under legal disabilities until the 25th July, 1865; that he did not employ Snowden, and that it was not until the affidavit of Mr. Donaldson was filed on the 22d May, 1866, with Rowles' answer to the first petition, that Herbert knew that the mistaken use had been made of Snowden's admission. This mistake is indicated but not charged in the first petition, but is distinctly charged and insisted upon in the second, and Mr. Donaldson's affidavit is referred to therein as evidence of the mistake. The appeal was therefore taken within nine months from the time when the appellant became aware of the mistake, and is in good time.

The proceedings show that the decree itself had disappeared from the papers until May, 1866, so that the appellant could not have known its purport before that time. If, then, the appeal be in time, it is submitted that the error in the decree, which must be tried on the face of the record, without reference to the explanatory affidavits on either side, is apparent. The decree must be supported either as a decree against a non-resident, or as a decree by consent. Regarding it as a proceeding against a non-resident, it is erroneous for the following reasons:

1st. There is no proof in the case that Herbert was a non-resident. This fact is essential to the jurisdiction of the Court, and should have been proved. *Boyd vs. Boyd*, 6 *G. & J.*, 29; *Bennett vs. Bennett*, 5 *Gill*, 467, *n.* The material allegation being that Herbert had gone to and was residing in Virginia, he must be regarded as an alien enemy, so that the bill was demurrable, and the Court without jurisdiction of the subject. *Act of Congress of July* 13, 1861; *Act of Congress of July* 17, 1862; *Tomlinson vs. M'Kaig*, 5 *Gill*, 274; *Hanger vs. Abbott*, 6 *Wallace*, 532; *Conn. Ins. Co. vs. Hall, American Law Reg., for August*, 1868.

2d. There was no affidavit of the fact of non-residence as required by the 26th rule of Court. *Oliver vs. Palmer*, 11 *G. & J.*, 440.

3d. The appearance of Snowden, conceding that he had authority to appear, did not change the character of the proceedings. It was still a proceeding against a non-resident. It appears by the record, that Snowden did not appear until June 9th, 1865, nearly a year after the commission to take testimony had been returned. The appearance could not *affect* the validity of the previous proceedings. *Code, Art.* 16, sec. 117.

The decree passed was not one that could be passed upon a prayer for general relief. It was inconsistent both with the case made by the bill and the relief specifically prayed, and was calculated to take the defendant, or those acting for him,

by surprise. The order of publication does not notify the defendant that the complainant sought to recover money from him, but to pay money to him. This is not an objection to the sufficiency of the averments of the bill; but admitting the sufficiency, the decree is not in conformity to any case made by those averments. 1 *Daniell's Ch. Practice*, 351, 384, 435, 441, *note a; Chalmers vs. Chambers*, 6 *H. & J.*, 29; *Tomlinson vs. McKaig*, 5 *Gill*, 276.

The decree cannot be supported as a decree *by consent.*

The decree professes to rest on the bill, answer and testimony, and other proceedings. It is not a decree by consent in form, nor is the admission broad enough to support it. *Williams vs. Williams*, 7 *Gill*, 305.

Snowden's admission must be read in connection with the bill and other proceedings. The bill alleges that there is an indebtedness from Rowles to Herbert, and offers to pay it when ascertained. *It does not pretend that Herbert owes Rowles anything.* The proof before the Court does not show that Rowles has paid any part of the debt. Nor does the proof show any deficiency in the quantity of land, but only that there was a disputed title to a part. The amount mentioned in the admission is about the amount remaining due on the mortgage without any abatement for the deficiency, and is $235.16 more than the amount claimed by Rowles.

In view of these facts, the admission cannot be understood as meaning a debt from Herbert to Rowles, without proof that it was so intended; and there is no such proof in the record in this appeal.

*Thomas Donaldson* and *Wm. M. Merrick*, for the appellee:

The petition and amended petition were rightly dismissed.

The decree was enrolled, having been signed by the Judge and filed by the clerk, and three terms had passed before either of the petitions was filed. *Dorsey vs. Clark*, 4 *H. & J.*, 553; *Lovejoy vs. Irelan*, 19 *Md.*, 56; *Pfeltz vs. Pfeltz*, 1 *Md. Ch. Dec.*, 455; *Ducker vs. Belt*, 3 *Md. Ch. Dec.*, 13; *Stewart vs. Beard*, 3 *Md. Ch. Dec.*, 227.

The appeal from the decree itself of July 5th, 1865, should be dismissed in accordance with the motion made in this case, because it was taken more than nine months after the passing of the decree, and is not within the exception of the statute. *Contee vs. Pratt,* 9 *Md.,* 67.

Even if Herbert be entitled to an appeal from the decree of July 5th, 1865, as within the exception of the statute, there is no ground for reversal. Most of the points made by the appellant are merely formal. On the question of the appeal from the original decree, its correctness must be determined by the state of the case at the time it was rendered, and the appellate Court cannot look to anything subsequent thereto appearing on the record. *Johnston vs. Thomas & George,* 6 *Md.,* 452.

The decree is in accordance with the averments of the bill, and with the prayer for general relief; for although the complainant offers to pay any balance that may be due by him, he does in express terms claim an abatement for a deficiency of nineteen acres, at $51.75 per acre, and states in detail all his payments on the land, from which averments the indebtedness of Herbert to him for over-payments is an absolutely necessary conclusion. That is in fact the case made by the bill, on which the complainant was entitled to recover, and the omission of a prayer for the specific relief of re-payment of the sum so overpaid is of no consequence. *Campbell vs. Lowe,* 9 *Md.,* 500; *Bolgiano vs. Cooke,* 19 *Md.,* 375; *Crain vs. Barnes,* 1 *Md. Ch. Dec.,* 151, *and* 8 *Gill,* 391.

The appearance of the defendant made the proof of his non-residence unnecessary before obtaining a decree; although there is no proof in the record of there being any such rule of Court as stated by the appellant, (*Cherry vs. Baker,* 17 *Md.,* 75,) and even if there were such rule, the decree would not be vitiated for non-compliance with it.

It is true that there was no consent to the decree made part thereof, or endorsed thereon by the defendant's solicitor, so that an appeal would lie from it, if made in time; but on the

final hearing of the appeal the objection that the decree is in accordance with the actual consent or admission previously made, will be entertained, and in such a case as this it is conclusive against the appellant.    *Williams vs. Williams,* 7 *Gill,* 305.

ROBINSON, J., delivered the opinion of the Court.

As a general rule, it is true that a decree once enrolled cannot be opened, except by a *bill of review,* or by an original bill *for fraud.*    To this rule, however, there are well founded exceptions, arising in cases not heard upon the merits, and in which it is alleged that the decree was entered by *mistake* or *surprise,* or under such circumstances as shall satisfy the Court in the exercise of a sound discretion, that the enrolment ought to be discharged and the decree set aside.    These exceptions are supported not only by the soundest reason, but by the highest authority.    The decree in such cases being by default, and not upon the merits, the cause of the default can never be the subject of inquiry until the decree has been pronounced, and generally not until *after the term* has passed.    Without the exercise, therefore, of this power in the Court to vacate the enrolment, a party against whom a decree had been entered and enrolled by *mistake* or *surprise,* and without any *laches* on his part, would be without redress, however meritorious his defence may have been.    A bill of review would be of no avail, because his claim to relief is not based upon error apparent in the decree, nor on account of newly discovered evidence; and unable to charge *fraud* in obtaining the decree, he could not file an original bill to vacate it upon that ground.    Accordingly it is laid down by the most eminent elementary writers, and fully sustained by adjudged cases, that where a case has not been heard upon the merits, the Courts will, upon good cause being shown, "exercise a discretionary power of vacating an enrolment and giving the party an opportunity of having his case discussed."    2 *Dan'l Ch. Prac.,* 1230 ; 2 *Madd. Ch.,* 466.

In *Kemp vs. Squire*, 1 *Ves. Sr.*, 205, where the plaintiff, who had continued an infant from the beginning of the suit until within six weeks of the decree, filed a petition to have the enrolment set aside, because of the great neglect of his solicitor; LORD HARDWICKE at first doubted whether it was in the power of the Court to open the enrolment, and desired that the precedents might be searched.

Two were found, the one of *Robson vs. Cranwell*, 1 *Dick.*, 61, where a bill was brought by a person of full age who having left money with his solicitor to employ counsel, " *went beyond sea.*" The solicitor having failed to employ counsel, the bill was dismissed. Upon application of the party it was held to be a dismission by default, and the enrolment was opened and the order set aside.

Also in *Benson vs. Vernon*, 3 *Bro. C. P.*, 626, where there was a decree *pro confesso*, and the original bill dismissed, upon application to reverse the order dismissing the bill, and vacate the enrolment, it was decided, upon appeal to the House of Lords, that inasmuch " as the merits of the case had not been entered into," the enrolment should be set aside. Upon the authority of these cases, LORD HARDWICKE said it was a discretionary power in the Court, to be exercised or not, according to the circumstances of the case.

In *Hargrave vs. Hargrave*, 9 *E. L. & E.*, 14, the enrolment was discharged and the decree opened by petition, upon the allegation of *surprise;* nor is the case of *Charman vs. Charman*, 16 *Vesey, Jr.*, 115, in conflict with these decisions, LORD ELDON having refused in that case to open the enrolment, because it had been heard upon the merits.

The cases in this country are in accord with the English authorities upon this subject. In *Millspaugh vs. McBride*, 7 *Paige*, 509, the Chancellor held, that it was within the power of the Court to " open a regular decree by default, even after enrolment, for the purpose of giving the defendant an opportunity to make his defence, where such defence is meritorious, and he has not been heard in relation thereto, either by mis-

take or accident, or by the negligence of his solicitor," and the cases of *Carter vs. Torrance,* 11 *Geo.,* 654; *Erwin vs. Vint,* 6 *Munf.,* 267, are to the same effect.

The case of *Oliver vs. Palmer & Hamilton,* 11 *G. & J.,* 137, is not, therefore, as was supposed in the argument, without authority to sustain it; nor is it in conflict with *Birch vs. Scott,* 1 *G. & J.,* 393. After deciding in that case, the party was not entitled to relief either by bill of review, or by an original bill for fraud, the Court say, "the only remaining question to be considered is whether it is consistent with the salutary and wholesome exercise of that sound discretion, which it is admitted the Court possesses upon subjects of this nature, to open or discharge the enrolment and vacate the decree, for the purpose of enabling the defendant to make his defence. Upon full and mature deliberation, we are of opinion that it is not." The power, however, of the Court to do so, in a case properly invoking the exercise of that discretion, is distinctly admitted. The apparent conflict in regard to this question, arises from the failure to distinguish between cases in which the decree has been pronounced upon the merits, and where it has been entered by default, or where the merits have not been considered.

In the application of these principles to the case now before us, we do not think the facts set forth in the petition and amended petition, in connexion with other facts disclosed by the record, sufficient to warrant the Court in the exercise of a sound discretion, to vacate the enrolment, and set aside the decree. True, the proceedings at first were of an *ex parte* character, but before the decree the appellant appeared by his solicitor, and could have made his defence. In fact the case was submitted upon what he deemed sufficient proof to disclose the merits of the defence, and if the Court decreed adversely, his remedy was by an appeal; or if the decree was by mistake, his claim to relief before enrolment was undoubted. It was not a decree by default for which this Court can relieve upon petition after enrolment. The fact

of being an alien enemy, and thereby disqualified from appearing in person or by attorney, cannot avail in this case. The privilege of appearing by attorney was accorded to and availed of by appellant, and justice and good faith demand that he shall not now be permitted to repudiate his own act or that of his attorney. For these reasons we think the petition and amended petition were properly dis-missed.

This brings us to the appeal from the original decree, and the first question to be decided is whether it was taken in time. By the provisions of the Code the appeal must be within nine months, unless it is alleged on oath, that the decree or order was obtained by fraud or mistake. The nine months in this case had elapsed, but the appellant in his affidavit alleges that it was obtained by mistake, and the petition and amended petition are referred to for the purpose of showing the nature of the mistake, and the time when it was discovered. By order of the Court, however, passed on the 13th day of June, 1866, the decree was *vacated* and *annulled,* and as a matter of course the right of appeal could not be exercised so long as the decree remains suspended. There was no decree from which an appeal would lie, and upon the authority of *Bennett, et al. vs. Bennett, et al.,* 5 *Gill,* 465, the time during which the decree was suspended must be deducted. If so the appeal was in time.

How then stands the decree upon the proof and proceed-ings ? The bill was filed in 1863, and alleges the purchase of a tract of land by Rowles of Herbert—the price per acre—the conveyance—the mortgage to secure the unpaid purchase money, and the payments thereon, and the admission of a balance due Herbert.

It then charges that Rowles had *discovered* a deficiency of *nineteen acres*—that Herbert was a non-resident—that the complainant was anxious to pay the balance due on the pur-chase, after an allowance on account of the deficiency, and prays that an account may be taken, &c.

No appearance having been entered by Herbert, a decree, *pro-confesso*, was passed, and a commission issued to take testimony. On the 5th of July, 1865, the cause was submitted to the Court, and it was decreed that Herbert should pay to Rowles *eight hundred and eighty-six dollars and forty-eight cents*, with interest from that date. Now upon what proof is it proposed to sustain this decree, waiving all objections to the mode and manner in which it was taken?

As to the contract of sale, we have the parol evidence of Brown and Talbot, that the land was sold by the acre, the price per acre, and the number of acres it was supposed to contain. In regard to the alleged deficiency, Dawson testifies that he was employed as surveyor to the commissioners appointed to divide the real estate of the late Camilla Herbert; that he knows the land allotted to the appellant, and that it calls for the north side of the Patapsco falls, bounding thereon; that he *understood* Herbert sold by that boundary,—that Rowles had *discovered* a claim to *"part of said falls,"* by the owners of "East Lothian," by virtue of an elder survey, and that to gratify the call of this older survey, the tract sold to Herbert must suffer a loss of eighteen acres. This is the proof! The deed with its covenants and description of land is not produced, the owners of "East Lothian" are silent as to their claim, no survey of either tract is made, no evidence of a suit or of any steps taken by the parties claiming under the elder survey, to disturb the possession or evict the purchaser from *the bed of Patapsco falls, the alleged land in dispute.* Now such proof as this is not sufficient to establish the claim for abatement.

But it is insisted that admitting this evidence standing alone to be insufficient to sustain the decree, the following paper, signed by Snowden, solicitor for the appellant, dispensed with the necessity of further testimony:

"Rowles
    *vs.*      ⎬ In the Circuit Court for Howard Co., in Equity.
Snowden.

"It is admitted that the amount of indebtedness in this cause is eight hundred and eighty-six dollars and forty-eight cents, said amount including interest to the 5th of June, 1865."

Now whilst it is contended on the one hand, that this paper means an acknowledgement of indebtedness from Herbert to Rowles, it is with equal confidence asserted on the other that it plainly imports just the reverse—an indebtedness to Herbert. If we look to the paper as our only guide to its proper interpretation, we think it must be admitted, that it is by no means clear and unambiguous; and if viewed in connexion with the bill and proof, we see nothing to strengthen the construction placed upon it by the appellee. In speaking of the proof, we have reference of course to such as was taken before the decree, and not to the affidavits of Snowden and Donaldson, subsequently filed. Looking to the case as it stood before hearing, we see no reason why Snowden may not have understood and so intended the paper to mean an indebtedness to Herbert. The bill of complaint no where alleged an over payment of the purchase money, but on the contrary, in the prayer asks leave to pay the balance due after deducting therefrom the allowance claimed for deficiency in number of acres. We speak of course of the bill upon its face, and without reference to any calculation in regard to the amount of purchase money, payments, and allowance for deficiency. Moreover, by no calculation which we have been able to make, nor by any which was furnished in the argument, allowing Rowles the full amount claimed by him for deficiency, can the decree be sustained, whereas by giving to the paper signed by Snowden, the construction contended for by the appellant, we find the indebtedness thereon admitted to be within a few dollars

of the sum claimed to be due Herbert. How can we, therefore, say that the paper means and that Snowden thereby intended to admit an indebtedness to Rowles?

Being of opinion that the proof is altogether insufficient to sustain the decree, it must be reversed and the cause remanded for further proceedings.

*Decree reversed and cause remanded.*

(Decided 10th March, 1869.)