Volland v. Wilcox.

GEORGE J. VOLLAND, PLAINTIFF IN ERROR, V. GEORGE H. WILCOX, DEFENDANT IN ERROR.

1. County Courts: VACATING JUDGMENT. A county court for sufficient cause, may vacate or modify its own judgments in term cases, during the term at which they were rendered.

2. ——— : ——— : TRIAL. On the facts stated in the opinion, *Held*, That the judgment should have been vacated and a trial on the merits granted.

ERROR to the district court for Hall county. Heard below before GEORGE W. POST, J.

*Dilworth & Smith,* for plaintiff in error.

*T. O. C. Harrison,* for defendant in error.

MAXWELL, J.

This action was brought in the county court of Hall

county by the plaintiff against the defendant to recover the sum of $255.00 and interest upon two promissory notes, amounting in the aggregate to $250, and an account for $5. The defendant in his answer denies the account; "admits the execution of the notes, but alleges that they were given for a span of mares; that the plaintiff falsely represented that said mares were respectively five and six years of age; also, that he represented that said mares were true, sound, and kind, good brood mares, and a good, strong, reliable farm team." That "said mares were so old that they were unfit for work, and could not be used in farming because they were so old and weak that they could not stand any labor." It is also alleged that one of the mares died about six weeks after the purchase, and that the other was of no value whatever. The defendant claims damages in the sum of $300, without stating any special facts that would entitle him to special damages. He also pleads a set-off of $100 for the value of an ox taken by the plaintiff. The summons was issued June 19th, 1882, returnable July 3, 1882. At the time of the return of the summons the defendant appeared and required the plaintiff to give security for costs, which was given. An answer was then filed by the defendant, and the cause continued till the 12th day of July, 1882, at 9 o'clock A.M. On the 10th of that month Mr. Laird, the plaintiff's attorney, sent the following telegram to the county judge:

"HASTINGS, 7–10, 1882.

" *Hon. H. H. Caldwell, County Judge, Hall Co., Neb.:*

"In Volland v. Wilcox, will you say to his att'y that we have a material witness absent and shall have to continue for two weeks, and ask if he will agree. Answer.

"JAS. LAIRD."

To which he received the following reply:

"GRAND ISLAND, NEB , July 11th, 1882.
"*Jas. Laird, Hastings:*

"Abbott will agree to continuance for two weeks if a reply is filed.

"CALDWELL."

Laird thereupon sent a telegram to Mr. Abbott, as follows:

"HASTINGS, 7–11, 1882.
"*Hon. O. A. Abbott, Grand Island, Neb.:*

"In the Wilcox case we accept your proposition.

"JAS. LAIRD."

Laird also swears that at the time of sending the last dispatch he wrote to Judge Caldwell "stating the substance of said agreement." No copy of the letter is set out in the record, however, nor does it appear at what time it was received by the judge. It also appears that the word "Abbott," in the telegram from Caldwell to Laird, was a mistake of the telegraph operator, and should have been "Att'y." Mr. Abbott is not the defendant's attorney of record, and there is nothing to show that he was in any way connected with the case. On the 12th of July, 1882, at the time set for trial, the defendant appeared, and, after waiting one hour, the plaintiff or his attorney failing to appear, the defendant was sworn as a witness, and the court thereupon rendered judgment in his favor against the plaintiff for the sum of $131.25 and costs of suit. Two days thereafter Laird filed an affidavit setting up the above facts, with copies of the telegrams above referred to in support of a motion to set the judgment aside. The motion was overruled. The plaintiff then took the case on error to the district court, where the judgment was affirmed.

Section 7, of the act approved March 3, 1873, "concerning the organization, forms, and jurisdiction of probate courts," [Comp. St., chap. 20] is as follows: "It shall be the duty of the probate judge of each county to hold a regular term of the probate court at his office at the

county seat, commencing at nine o'clock A.M., on the first Monday of each calendar month, for the trial of such civil actions brought before such court as are not cognizable before a justice of the peace. Such regular term shall be deemed to be open without any formal adjournment thereof, until the third Monday of the same month, when all causes not then finally determined shall be continued by such court to the next regular term, but such courts shall be deemed to be always open for the filing of papers and issuance of process in civil actions, and for the purpose of taking and entering judgment by confession."

Sec. 8 provides that, "In all cases commenced in said courts wherein the sum exceeds one hundred dollars, it shall be the duty of the probate judge to issue a summons, returnable on the first day of the next term of said court, if there be ten days intervening between the issuance of the summons and the first day of the term, and if not then to be made returnable on the first day of the next term thereafter, which summons shall be directed and delivered to the sheriff or any constable of said county, and the sheriff or constable shall serve the same upon the defendant as in other civil cases, at least ten days before the return day thereof. When the summons has not been served ten days before the first day of the term the cause shall stand continued until the next regular term of said court, and shall then stand for trial without further notice to the defendant."

Sec. 10 provides that, "In all civil actions in the probate court where the amount claimed exceeds one hundred dollars, the plaintiff, his agent or attorney, shall, before the summons is issued thereon, file in such court a bill of particulars setting forth in ordinary and concise language his demands; and the defendant shall also, on or before the first day of the term at which the cause stands for trial, file in such court his answer containing any set-off or other defense he may have. Such bill of particulars shall be

verified in like manner as a petition is required to be veri-fied in the district court, and when so verified no other or greater proof shall be required to entitle the plaintiff to judgment upon default than in actions in the district court."

Sec. 11 provides that, "In actions before said court where the amount claimed exceeds one hundred dollars, motions and demurrers shall be allowed, and the rules of practice concerning pleadings and processes in the district court shall be applicable, so far as may be, to pleadings in the probate court."

Sec. 12 provides that, "If no answer is filed on or before the first day of the term, in any action to be tried during such term, the plaintiff may have the default of the defend-ant entered, and may proceed to judgment on any succeed-ing day during the term, upon proving his cause of action."

Sec. 15 provides that, "The probate judge shall, on the first day of each term, or as soon thereafter as may be, pre-pare a calendar of the causes standing for trial at such term, placing the causes upon such calendar in the order in which the same are numbered on the docket, and setting the causes for trial, in such order, upon convenient days during such term; and the provisions of this code relative to the trial docket in the district court shall, so far as they are in their nature applicable, apply to such calendar."

It will be seen that in term cases the practice to a con-siderable·extent is the same as in the district court. And without doubt the same power exists to control its judg-ments during the term at which they are rendered. That the district courts possess the power to vacate or modify their judgments at the term at which they are rendered is unquestioned. *Smith v. Pinney*, 2 Neb., 139. *Mc-Cann v. McLellan*, 3 Id., 25. *Wise v. Frey*, 9 Id., 220. *Hansen v. Bergquist*, 9 Id., 277. This power is conferred to prevent injustice, as where a judgment is entered by mistake or under such circumstances as to satisfy the court that it ought to be set aside.

In *Millspaugh v. McBride*, 7 Paige, 509, it is said: "I think the counsel for these defendants has been successful in showing that it is within the power of the court to open a default, even after enrollment, for the purpose of giving a defendant an opportunity to make his defense, where such defense is meritorious and he has not been heard in relation thereto, either by mistake or accident, or by the negligence of his solicitor. The cases of *Kemp v. Squire*, 1 Ves., Sen., 205, and of *Robson v. Cranwell*, 1 Dickens, 61, show that the enrollment may be discharged when necessary for the purpose of opening the decree. And in *Beekman v. Peck*, 3 Johns. Ch., 415, Chancellor Kent set aside a regular decree by default, upon motion after enrollment to let in a defense upon the merits." See also *Tripp v. Vincent*, 8 Paige, 176. · *Curtis v. Ballagh*, 4 Edw. Ch., 635. *Herbert v. Rowles*, 30 Md., 271. *Loree v. Reeves*, 2 Mich., 134. *Hurlbut v. Reed*, 5 Id., 30. Freeman on Judgments, § 100.

In *Hansen v. Bergquist*, 9 Neb., 269, it was held in effect that county courts possess the power to vacate or modify their judgments during the term at which they were rendered; and such ruling is in furtherance of the proper administration of justice. We therefore adhere to it.

In the case under consideration there certainly was a sufficient reason shown why the plaintiff failed to appear at the trial, and he was not guilty of laches. He should not therefore be deprived of his rights by a mistake of the telegraph operator. This being so, the court should have set the judgment aside and permitted a trial upon the merits. The judgment of the district court and also of the county court is reversed and the cause remanded, the costs, except in this court and the district court, to abide the event of the suit.

JUDGMENT ACCORDINGLY.

THE other judges concur.