Schoonhoven *v.* Pratt et al.

JAMES SCHOONHOVEN, Appellant, *v.* PHILEMON B. PRATT *et al.*, Appellees.

APPEAL FROM COOK.

Where it appears that a party holding a conveyance of land under a trust deed to secure the payment of two thousand dollars, the land being worth much more than that sum, agrees to extend the time of payment on receipt of a sum exceeding the interest past due, which sum is offered, a sale under the trust deed will be set aside on terms. The excess offered beyond the interest due will be taken as a consideration for the extension of time.

PHILEMON B. PRATT and Mary L. Pratt, complainants below, in the Kane Circuit Court, filed their bill against James Schoonhoven, Smith Herford and Edward Scofield. On same day the clerk of said court issued a writ of injunction, and also issued a summons in the cause.

No service was ever had on Scofield, nor was he ever brought into court, and the complainants dismissed their bill as to him.

Schoonhoven by his counsel moved to dissolve the injunction.

Complainants, on motion, caused the venue of the cause to be changed to the Cook Circuit Court.

The bill alleges, that Pratt and wife are residents of Kane county, Ill.; that on December 22, 1857, they executed a trust deed to Ebenezer F. Colby, as trustee of the land in controversy, to secure a judgment note for $2,400, dated Dec. 22, 1857, payable to said Schoonhoven one year after date, made by said Pratt; that they owed heirs of William Welch about $2,000, which had to be paid about the first of January, 1858,

or they would lose the title to the land described in the trust deed.

They were obliged to borrow the money to pay said indebtedness. Schoonhoven and Herford knew this, and offered to get it for them; and said they could get it of Edward or David Scofield, who had money to loan, and they were loaning it for him, and appeared to be interested; and said the rate of interest was twenty per cent.; complainants informed Schoonhoven and Herford they would at that rate take $2,000 for one year. Shortly after, Schoonhoven and Herford advised complainants they had got the $2,000 for them, and given their note to said Scofield for it—Herford signing as surety for Schoonhoven.

December 18, 1858, Pratt, who is a dentist, went South to practice his profession.

Mrs. Pratt was advised by her husband before he left, that Schoonhoven had agreed and promised that he would extend payment of the $2,400 note one year, if the interest was paid; he required twenty per cent. on the $2,000, and required it paid in advance; and he (Pratt) had agreed to pay it; and to meet the interest, Pratt had left a note against one Wheeler at Davidson's bank in Elgin, which, when collected by Davidson, was to be paid over to Schoonhoven, and the time of the $2,400 to be extended one year; and Mrs. Pratt believed this statement of her husband.

When her husband is absent she takes charge of his business.

On the day after the $2,400 note became due, Schoonhoven, at Mrs. Pratt's, said Mr. Pratt had gone off, and he was afraid the interest would not be paid, and she told him it would.

Wheeler said he would pay the money on the Monday or Tuesday following—this was communicated to Schoonhoven, who said, " Well, that is all right."

Next Monday, (27th December, 1858), Schoonhoven and Herford called on Mrs. Pratt, and Schoonhoven said if the interest was paid, that was all he wanted; he wanted that promptly and nothing more; and she told him the interest at twenty per cent. on $2,000 would be paid in at Davidson's the next day, and he could get it by calling, which he agreed to.

December 29th, 1858, Wheeler paid in at Davidson's the $400.

Up to this time no intimation had been given that Schoonhoven wanted any change made in note or trust deed. The agreement was, they were to remain another year as they were.

A conversation between Mrs. Pratt and Schoonhoven, occurred in Elgin about the interest; Schoonhoven said he had not got it, and that Davidson would not let him have it; and then said he was going to sell the farm. This was the first knowledge

Mrs. Pratt had that Schoonhoven was going to sell the farm under the said trust deed.

December 31, 1858, Schoonhoven assured Mrs. Pratt, that if she got I. C. Bosworth to sign papers with her, that would be satisfactory.

January 10, 1859, Bosworth came, but Schoonhoven refused to extend payment unless a new note and trust deed running to Scofield were executed ; this Mrs. Pratt agreed to.

Afterwards Mrs. Pratt, Mr. Schoonhoven and Herford met to have new trust deed and judgment note made, to be sent to her husband for execution.

After new papers were made, Schoonhoven said "he would do no such thing."

Mr. Pratt was in New Orleans, and expected to remain in the Southern States until spring.

Said note was given for borrowed money, and the amount actually borrowed and received was only $2,000. The excess in note is interest on same at twenty per cent.

Land is described. Its value is at least $7,000.

December 24, 1858, Colby, the trustee, at Schoonhoven's instance, advertised land for sale in Elgin Gazette. This was done in violation of said agreement to extend.

Mrs. Pratt was exerting herself to get the money to pay the $400 interest for loan of $2,000 for one year, which "is contrary to and in violation of the statute and the interest laws of Illinois, and is usurious."

The $400 interest money was deposited with Davidson, December 29, 1858, with Schoonhoven's assent, and he could draw it as he knew, and it continued there thus up to January 31, 1859—provided he, Schoonhoven, would extend payment of note one year.

Pratt left, believing the matter was arranged, and he had another year's time, and not expecting any sale of land on trust deed.

Schoonhoven supposed he could sell land without its being discovered by Mrs. Pratt, and thus defraud complainants.

Schoonhoven, Herford and Scofield in concert were seeking to acquire the title to the land.

The $2,000 borrowed of Schoonhoven, was the money of the three, Schoonhoven, Herford and Scofield, or if Scofield's money, Schoonhoven and Herford had the management of it, and divided with Scofield the usurious interest received.

Neither of the defendants wanted the money except interest, but it was to loan.

Complainants had a bill drawn, and applied to C. B. Wells, master in chancery, January 26, 1859, for an injunction upon

the sale. Schoonhoven was notified of application to be heard January 28, 1859. Schoonhoven appeared on the 28th, and asked for time. Master granted motion, and set 2nd of February for hearing, and ordered sale adjourned until February 7th. On 2nd of February parties again appeared before master; a partial hearing took place, and further hearing postponed until 8th February, and sale was ordered adjourned until 14th February. On 8th February, 1859, parties again appeared before the master; the hearing was completed, and the injunction refused.

No change in notice of sale was made in issues of paper, January 28th and February 5th. Copies of notices are attached to bill, marked letters C. and D. Notice changed in issue of 11th February, A. D. 1859.

On February 14th, 1859, Colby, as trustee, sold the land to Schoonhoven for $2,500, and conveyed the same to him.

Mrs. Pratt remonstrated against the sale, and offered to pay $400; but the sale went on.

Complainants are ready to pay money equitably due Schoonhoven, and Schoonhoven intends to get possession of the land, and hold it.

But few persons were present at the sale, and they were friends of defendants and came at their request.

Schoonhoven and Herford had not paid Scofield any of the money they got of him, to loan to complainants when land was advertised, nor at the time of sale, nor since.

All was done by the defendants to get land at a nominal price.

Defendants knew Mrs. Pratt could not get the money to pay the debt.

She offered everything to have defendants put off sale until spring, when her husband would be home.

Prayer, that complainants be not disturbed in possession of the land; that sale and conveyance by Colby to Schoonhoven be set aside, and upon payment to Schoonhoven of amount due, trust deed may be satisfied; that defendants pay all costs, and general prayer for other relief.

Schoonhoven answered, and admits the execution of the $2,400 note by Pratt, and the trust deed by him and wife to Colby, as averred in the bill; admits Pratt was indebted to the heirs of William Welch in the sum of $2,000, which had to be paid the latter part of December, 1857, or he would lose the land in controversy, and that he had to rely on borrowing the money to pay said indebtedness; denies offering to procure the money for him, but avers Pratt importuned him for aid, and out of sympathy, Schoonhoven helped him to the money; admits David Scofield had money to loan, but denies he ever was or ever

did act as his agent, or that he had any interest, directly or indirectly, in the money got of Scofield; avers the facts in relation to getting said money of Scofield, and the execution of said $2,400 note and trust deed to be as follows: in 1853, Pratt bought the land in question of William Welch on credit, and to secure the purchase money, he and his wife gave a mortgage on the land to Welch. Not getting their pay, the heirs of Welch, in the Kane Circuit Court, by *scire facias*, foreclosed the mortgage, and on the 23rd December, 1856, on an execution upon the judgment in said suit, the said land was sold by the sheriff. To save the land, Pratt had to redeem from said sale by December 23, 1857. Up to December 15th, 1857, he had been unable to get the money, and had made no definite arrangements for it. Hearing that Scofield had the money, he applied to him for the loan of $2,000 for one year. Scofield had the money to loan, but declined to let him have it. At this time Pratt's child was sick; he was in trouble, and as a friend he besought Schoonhoven to assist him. Scofield would, on the note of Schoonhoven and Herford, loan the money at twenty per cent. for one year, and at the request of Pratt, and for his benefit, on the 22nd of December, 1857, Schoonhoven got the money, $2,000, of Scofield, and gave therefor to Scofield, his and Herford's note for $2,400, payable December 22, 1858. And to secure Schoonhoven, Pratt gave to Schoonhoven his note of same date and amount, and payable at same time, and he and his wife executed the said trust deed to Colby; that with the $2,000 got of Scofield, Schoonhoven went thirteen miles to Geneva with Pratt, and redeemed said land from said sale. In all this transaction Schoonhoven had no interest whatever, and expected no benefit, and never derived any.

Schoonhoven denies knowing Pratt intended to go South, but avers when Pratt left, he supposed he was going to Chicago to get the money to pay said $2,400 note, as Pratt told him so.

Denies he ever told Pratt, or Mrs. Pratt, he would extend payment of said money on the old papers, but admits he told Pratt that if $400 interest was paid, and new papers were made, it might be extended, as Scofield would take the $400 and new papers, and give up Schoonhoven's and Herford's note, and thereby Schoonhoven would get rid of the matter.

Denies conversation alleged to have occurred between him and Mrs. Pratt.

Avers he told Pratt divers times in the fall of 1858, that he would not occupy the position in relation to said money he was then in another year, and that Pratt must in some manner before the $2,400 note to Scofield was due, so arrange as to get him

discharged, and insists that if there was any promise to extend payment, it was without consideration, and void.

He admits telling Mrs. Pratt that he would take Pratt's and I. C. Bosworth's note for the money for another year, informing her at the same time that Scofield would take such a note and give up his and Herford's; but avers that complainants never got Bosworth to sign a note with Pratt. Schoonhoven denies that the version of what occurred in S. Wilcox's office in the bill contained is true, but avers the facts to be as follows: he told Mrs. Pratt if she would pay $400 down, and deliver on the 25th of January, 1859, P. B. Pratt's note for $2,400, dated December 22, 1858, and payable one year thereafter, and a mortgage on the land executed by her and her husband, securing said note, and pay costs defendant had incurred, and redeem the Cook county part of said land from the tax sale, he would discontinue sale, and give up the old note and trust deed. She agreed to this, and J. S. Riddle was to prepare the papers, and with this understanding the parties left said office to meet again next morning. Next morning the parties met; the papers were prepared; then Mrs. Pratt would not pay the $400 unless the same was indorsed on the old note, and time extended on them for one year; this Schoonhoven refused to do, because Scofield would not (on account of interlineations) take the old papers, and give up his and Herford's note, but would take new papers in exchange. She then proposed to pay the $400, provided Schoonhoven would return it in case P. B. Pratt would not sign the new papers—which proposition Schoonhoven refused; thereupon parties left the office.

Denies the premises were worth $7,000, or one-half of that sum; avers complainants have been and are lessening the value by removing wood and stone, and by bad management. Admits requesting Colby to advertise land for sale, December 24, 1858; denies violating any agreement thereby; denies any money being deposited with O. Davidson, subject to his order; denies wanting land; offers to take amount paid Scofield, ($2,800), and costs and expenses he had been put to, less $100, and give up the land, and release claims against Pratt.

Admits preparation of bill, and application January 28th, 1859, before C. B. Wells, master in chancery, for an injunction staying sale; admits that on that day parties appeared, and on motion of Schoonhoven and by agreement of parties, the hearing was postponed until the 2nd of February, and by like agreement of parties, the sale was adjourned until the 7th of February, 1859. On the 2nd February, parties again appeared before said master, and at the instance of complainants, and by agreement

of the parties, the hearing was again postponed until the 8th of February, 1859, and the sale by like agreement adjourned until the 14th of February, 1859; and that on the 8th of February final hearing was had, and injunction denied by the master. He admits that he caused notice of sale to take place on the day agreed upon as aforesaid, to wit, 14th February, A. D. 1859, to be advertised in the Elgin Gazette, and avers that on the day and at the hour named in the said notice, the said land was by said Colby, as trustee, as aforesaid, in pursuance of said trust deed and notice, at auction publicly and fairly sold to him, and afterwards, in pursuance of said sale, a deed of the land was made and delivered to him by said Colby; avers that Mrs. Pratt was present at the sale, and forbid it, and did all she could to prevent competition; that by reports against the validity of the deed, her right to redeem and intention to hold possession, etc., she deterred persons from bidding, and avers that if premises were sold for less than their value it was her fault.

He avers he has paid his and Herford's note to Scofield; that he was obliged to pay it at great loss.

Claims that complainants have not stated a case that entitles them to any relief, and asks for a dismissal of the bill on that ground; denies all combination, and every allegation in the bill not specifically answered.

Answer filed May 24th, 1859.

Herford admits making of the $2,400 note by Pratt to Schoonhoven, and making of trust deed of land in controversy by Pratt and wife to Colby, to secure the note; admits Pratt's indebtedness to Welch's heirs of about $2,000, which had to be paid at a particular time, or Pratt would lose said land; admits Pratt had to borrow the money to pay said indebtedness; denies ever offering to procure the money for Pratt; admits David Scofield had money to loan; denies ever acting or being Scofield's agent, or that he ever loaned money for him; avers the facts as to how said note and trust deed came to be given, substantially as set forth in Schoonhoven's answer; avers he had no interest in the money loaned to Pratt; that he expected to derive no benefit nor did he ever derive any benefit from said loan; admits Pratt went away December 18th, 1858; avers that Pratt was informed prior thereto, frequently, that Schoonhoven would not let matters stand as they were another year. Denies land is worth one-half of $7,000.

Denies he had any control over or interest in the matter of said money or loan. Admits application for injunction, and refusal of master to grant one, and admits advertisement of sale, and sale of land. Disclaims ever having or claiming to have had any interest or right in the said note or trust deed, or the

matter in controversy, and avers that he has none, and that he does not pretend to have any right, title or interest in the matters in controversy in this suit, and avers that Pratt and wife knew and know this. He submits to the court that there is no equitable case stated in the bill against him, and asks the benefit of this as though he had demurred to the bill. Denies all combination, and traverses every allegation not specifically answered.

This cause was heard before MANIERRE, Judge, October 15th, 1860, who rendered the following decree:

That the evidence proves the allegations in the bill; that complainant recover of said defendants the premises described in the bill, upon paying to Schoonhoven $2,640, and all costs made up to February 2, 1860; that each party pay their own costs made since, up to this date; that Mary L. Pratt's name be stricken from the bill as a complainant; that P. B. Pratt pay or offer to pay within ten days to Schoonhoven, $2,640; that concurrently therewith, Schoonhoven, by a quit claim deed, convey the premises to Pratt; that if Schoonhoven refuses to accept money and convey land, then complainant, within ten days thereafter, deposit said $2,640 with the clerk; and the master in chancery, at Schoonhoven's expense and on his behalf, deed the land to Pratt; that the injunction be made perpetual; and that clerk hold money (after paying master in chancery) subject to Schoonhoven's order.

WILCOX & DICKEY, for Appellants.

J. H. MAYBORNE, and LELAND & LELAND, for Appellees.

WALKER, J. There is but one question in this case which we deem it necessary to discuss, and it is, whether there was a valid agreement to extend the time for the redemption of the farm from the deed of trust, for one year after the money became payable. Appellee, before he went South, made the necessary arrangements to have collected and deposited, four hundred dollars, with Davidson, giving him directions to pay it to appellant as advance interest for the extension of the time of redemption for another year. Ellen and William Pratt both testify that in conversations in reference to the extension of time, they heard appellant state, that if the four hundred dollars should be paid, it would all be right. Mrs. Pratt sent her son to see Wheeler, who was to pay the four hundred dollars, and on his return he informed appellant that Wheeler had promised to pay the money on the following Monday or Tuesday, when he said it was all right. Wheeler paid the money, but appellant refused to receive it or extend the time of payment.

When the evidence is considered, we can have no hesitation in believing that appellee left with the understanding and belief that upon the payment of the interest in advance, for another year, the time for redemption would be extended. And we think it equally apparent that such was the understanding of appellant, as he, in a conversation with Mrs. Pratt and William Pratt, seems to have fully recognized such an agreement. When we consider the fact, that the farm was worth at least three-fold the amount of the debt for which it was pledged, with the interest, we can hardly comprehend that any man of common prudence would have left, when he knew that it was in the power of the creditor to require the trustee to sell, without any personal notice to appellee, and when such a sale would pass the title without redemption, without having first made arrangements for an extension of time for the payment. The agreement to pay the four hundred dollars for the extension of time to redeem, was substantially performed by appellee.

As there was two hundred dollars over and above legal interest, agreed to be paid in advance under the name of interest, we are at a loss to perceive why it did not constitute an ample consideration to support the agreement, if it were not usurious. After maturity the debt could only bear legal interest, not exceeding ten per cent. if so stipulated, or six if not, and if not relied upon by appellee as usury, the excess must be regarded as the consideration for an extension of the time for another year. As usury the appellee alone had the right to insist upon it as a defense, and until he interposed the statute, the contract is binding. And by tendering the original debt, together with the four hundred dollars with interest as the redemption money, the appellee has chosen to regard the excess over the legal interest as a consideration for the extension of time. But even if it were regarded as usurious, it was inequitable and unjust in appellant to induce appellee to rely upon his promise to extend the time of redemption until he should by his absence, be unable to redeem, and thereby be deprived of a farm worth from seven to eight thousand dollars for a trifle over two. It seems to us that a court of equity can never sanction such injustice and wrong, but must interpose its strong arm to afford relief. Fairness and justice surely required appellant, if he did not intend to extend the time for redemption, to notify the appellee, when applied to for further time, and not to mislead, or encourage a belief that time would be given. The law can never permit a man to mislead his friend and neighbor, and then reward him for it by giving him four or six thousand dollars' worth of his property. To so apply the law would be monstrous, and to use it as a snare for the honest and confiding, and a shield to the un-

30

scrupulous and designing, would be a perversion of justice. Such is not the spirit or policy of the law, but on the contrary it will prevent fraud and injustice, let it assume any guise it may.

We have no hesitation in saying, that the evidence shows that appellee was induced by appellant to rely upon the agreement, and was thereby prevented from redeeming the land within the time limited by the deed of trust, and that he was entitled to redeem at the time he made the tender, and that the decree of the court below must be affirmed.

*Decree affirmed.*