Stribling et ux. v. Hart, Executrix, et als.—Syllabus.

---

THOMAS E. STRIBLING ET UX., APPELLANTS, VS. CATHERINE S. HART, EXECUTRIX, ET ALS., APPELLEES.

1. The 45th Rule of Chancery Practice prescribes the time in which an answer after appearance should be filed by the defendant, and the 51st Rule prescribes the time in which the defendant, after his demurrer to plaintiff's bill is overruled, shall file his answer. In neither case is the plaintiff required by these rules or the general rule upon the subject of notice (Rule 3) to take any action to authorize him to enter an order that the bill be taken *pro confesso* in the event the answer is not filed as required by the rules mentioned.

2. After entry of the order that the bill be taken *pro confesso*, the plaintiff may at once, and without notice, cause the matter of the bill to be decreed at any time, if the same can be done without an answer and is proper to be decreed, that is to say, he can have such decree as the equities disclosed by his bill authorize.

3. When the bill is thus taken *pro confesso* and final decree had, it is, under Rule 45, a decree *nisi*, subject to be opened upon cause shown upon motion and affidavit and upon terms, and does not become "absolute" until the expiration of twenty days after the rendition thereof. After the expiration of this time, without any action by the defendant, the decree becomes final and "absolute." There is no difference arising out of the fact that under

the statute this final decree is entered out of term between it and a decree entered in term; and the proceeding is in a strict sense a record by which the rights of the parties in controversy are finally adjudicated.

4. While it appears that the Circuit Courts of the United States have not power to open such decrees absolute and enrolled, upon motion, and that their power is confined to such proceedings as may be had by bill of review, rehearing or original bill, still under the uniform practice in the State courts such a power is admitted to exist, and may be exercised under certain circumstances, and as a motion is the only means by which the decree may be opened, and a defence upon the merits let in, although the party may be guilty of no laches, and his failure to set up his rights in the time required may be occasioned *by causes beyond his control, and by obstacles insuperable in their character, and he may have a good defence,* we think the rule of the State courts as to the matter of power is the better rule, and we adopt it.

5. The power to open such decree, however, is not to be exercised in cases where the decree has been made absolute in the regular course, and the defendant has been guilty of neglect and failure to give attention to the process of the court. Without the existence of strong and unavoidable circumstances excusing such neglect and laches, the decree should not be opened. Such power should not be exercised upon a mere desire to let in a defence upon the merits. The facts established must show deceit, surprise or irregularity in obtaining the decree, that the defendant has acted *bona fide,* and with reasonable diligence, and has a meritorious defence, and the facts constituting such defence must distinctly and satisfactorily appear, and the proposed answer should be exhibited.

6. The action of the Chancellor upon a motion of the character mentioned may be reviewed in this court under the law and practice in this State.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*William B. Younge* and *John Earl Hartridge* for Appellants.

There can be no opening of a decree on motion after it

has been enrolled. 2 Daniel's Ch. Plead. and Prac., 1018 *et seq.*; 60 Ala., 378; 12 Peters, 492; 2 Johnson's Ch., 205; 1 Vesey, 256, note; 3 Wheaton, 591; 6 Howard, 593; Pickett vs. Loggon, 5 Vesey, Jr., 702; 16 Vesey, Jr., 115; 5 Allen, 81.

In this State all decrees are deemed to be enrolled when entered on the minutes of the court. McC. Dig., page 165, §44; Owens vs. Forbes, Adm'r, 9 Fla., 325. The statute authorizes a rehearing, provided a petition be presented within thirty days.

Rule 45 which has the force and effect of a statute, declares that when the bill is taken *pro confesso* the court may render a decree at any time, and such a decree so rendered shall be *absolute*, unless the court shall within twenty days after rendering the decree set aside the same on motion and affidavit. In this case more than twenty days had passed after the rendition and enrollment of the decree before any motion was made, and the court had no power to disturb the decree. If the court could vacate its decree after the expiration of the twenty days then there is no limit to the exercise of this power and another judge, many years after, might do the same thing, and decrees in chancery instead of settling the rights of all parties would settle nothing, and the word absolute in Rule 45 has no force and effect. We do not deny that upon a proper application and proof of such fraud and mistake as would warrant the court in enjoining a judgment at law, the court can annul its own decrees, but there must have been no laches, and the affidavits filed in support of this motion only show laches.

Even if the court had the power the facts did not warrant its exercise.

*Fleming & Daniel* for Appellees.

We contend that the court did not err in opening the decree *pro confesso*, but in doing so exercised a proper discretion.

If any irregularity has occurred in the enrollment of a decree or order, or in the proceedings to accomplish that object the court will, upon application by motion, order it to be vacated. 2 Daniel Ch. Pr., 5th Ed., §1026.

It seems also that where the case has not been heard upon its merits, the court will exercise a discretionary power of vacating an enrollment and of giving the party an opportunity of having the merits of his case discussed. 2 Daniel Ch. Pr., §1027.

Thus the enrollment was vacated where a decree of dismissal was made by default, owing to the neglect of the plaintiff's solicitor to provide counsel to attend at the hearing. Robinson vs. Cranwell, 1 Dickens, 61, (Eng. Chan. 2 Eliz., 38 Geo. 3d,) cited in 1 Ves., Sr., 205 ; Trapp vs. Vincent, 8, page 176; Parker vs. Grant, 1 Johns. Ch., 630.

The same principal was also acted upon by Lord Hardwicke in Kemp vs. Squire, 1 Vesey Sr., 205, who said the cases ✱ he cited proved it to be discretionary in the court, (he did not mean it arbitrarily so,) to exercise the power, if it sees fit. ✱ ✱ ✱ And it is to be observed that in all those cases where it has been exercised the merits of the cause had not been discussed before the decree was pronounced. 2 Dan. Ch., Pr., 1027.

The court has power at its discretion, after enrollment, to vacate a decree entered *pro confesso* to allow a defence upon the merits when it has been omitted through mistake, accident or even negligence. Carpenter vs. Muchmore, 2 McCarter, N. J., 123 ; Hall vs. Lamb, 28 Vt., 85 ; Disbrow vs. Johnson, 3d C. E. Green, 36 ; 2 Daniel Ch. Pr., 5th Ed., 1032, note 6.

But in order to open a decree regularly entered it is ne-

cessary that it appear that the defendant has some good defence, and what that defence is. Disbrow vs. Johnson, *supra.*

The application is addressed to the discretion of the court. Bull vs. Nims, 51 Ill., 171. And must be accompanied by affidavit explaining the delay and an answer showing merits. Norton vs. Hixon, 25 Ill., 440 ; Stockton vs. Williams, Harrington Ch., Mich., 241 ; Gwin vs. Harris, 1 Sm. & M. Ch., Miss., 528 ; Lewis vs. Simonton, 8 Humphrey, Tenn., 185.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

The bill here is by Stribling and wife against the executrix of the will of O. B. Hart and others, his sureties, as guardian of Mary E. Stribling, seeking an account and decree against such executrix and sureties for an alleged balance due her.

Appearances were entered by the defendants, Baldwin, Budington, Paran Moody and C. L. Robinson on or before the first day of November, 1880.

On the first of November, 1880, a demurrer was filed for these defendants, the ground of which was a want of jurisdiction in the Circuit Court. It was overruled the 25th of May, 1881. The rule day, therefore, to which an answer was due by them was the first Monday in June, the 6th day of June, as the court did not extend the time beyond that date. Upon overruling a demurrer of the defendant, he is required to answer by the next succeeding rule day unless further time is given by the Chancellor.

On the 16th day of September, 1881, Messrs. Fleming & Daniel entered an appearance for Marvin, Administrator, and on the 3d day of October, 1881, which was the rule

day of that month, Mrs. Catherine Hart, executrix of the will of O. B. Hart, entered her appearance. It is thus seen that the defendants, Baldwin, Budington, Moody and Robinson, on the rule day of November, 1881, the 7th, were in default for not filing their answer, from the sixth day of June to the 7th of November, a period of five months; that Marvin, administrator, was in default, according to the date of the entry of his appearance, one month, his answer being due by the rule day of October, and that Mrs. Hart who had appeard upon the October rule day was in default in not filing her answer on the November rule day. On that day an order taking the bill for confessed, was entered against all of the defendants. Under Rule 44 of the Rules of the Circuit Courts, in suits in equity, which authorizes this entry and declares its effect, the subsequent proceedings are *ex-parte*. The plaintiffs might thus have proceeded under the rule at once, and had an order of reference and consequent decree thereon immediately. This decree, however, was not made until the ninth day of February, 1882. In the meantime, the plaintiffs on the 22d November, 1881, consent that the order taking the bill for confessed, as to Budington, may be opened upon condition that he file his answer at once. This he does. There are exceptions sustained to his answer and upon their being sustained he is given to February rule day to file a more complete answer. This he fails to do, and after entering an order taking the bill as confessed against him the plaintiffs have a decree of reference to a master, a report and decree thereon on the 11th of March, 1882. Under this decree, and on the 10th day of April, 1882, an execution was issued against Catherine Hart, executrix of the will of O. B. Hart, and on the 17th of April, 1882, a return of no property found is made. Under the decree an execution was in this event directed to issue against the sureties to the extent of

their liabilities as found by the court. We do not find that such an execution was issued. It is not denied that the decree has been enrolled.

After notice given of intended motion to set aside the final decree and the order taking the bill as confessed and for leave to file answers by Fleming & Daniel, as solicitors for A. S. Baldwin, Marvin, administrator, and Mrs. Hart, executrix, and by D. C. Dawkins and Fleming & Daniel, solicitors for Budington, the Chancellor on the third of May, 1882, granted the order and gave the defendants fifteen days in which to answer the bill.

The appeal herein embraces this order, and the first question to be determined is whether a decree of this character can and ought to be opened on motion and affidavits under the circumstances of this case.

What is the nature of the decree? It is a final decree under the 45th rule of practice rendered absolute in its nature by failure of the defendants upon cause shown upon motion and affidavit within twenty days after its rendition to have it set aside or to have the time enlarged for filing the answer; such decree being based upon a default for want of an answer after appearance. Before the expiration of the twenty days, while it is in form final, it is in effect, under the rule, a decree *nisi*. After the expiration of the twenty days it is both in form and effect *final* and *absolute* under the rule. Such a decree is as effective and absolute as if rendered in term and the term of its rendition had expired. We mean by this that there is no difference arising out of the fact that under the statute it is entered out of term. It is, so far as this matter is concerned, in a strict sense a record by which the rights of the parties in controversy are finally adjudged. In Thompson vs. Goulding, 5 Allen, 81, this question is considered, and there can, in our judgment, be no doubt of the correctness of the conclusion

there reached, which is that a decree entered out of the term under the provisions of a statute like that of this State is as final as those entered in term. But it is said this is a decree *pro confesso* ; a decree final based upon a default, and it is within the power of the Chancellor to open such a decree upon motion. This is true of the nature of the decree except that there are two defaults, one a failure after appearance to answer in the first place, and one a failure to move to open the decree within twenty days after its rendition. It is practically a decree *nisi* until this time expires. Then the rules fixes its character. It is " absolute " as well under the statute as the rule. Can such a decree be set aside upon motion after the expiration of the twenty days without a motion so to do during that time.

The rules of the Circuit Courts of the United States in force in 1855 provided that " when the bill is taken *pro confesso* the court may proceed to a decree at the next ensuing term thereof and such decree rendered shall be deemed absolute unless the court shall at the same term set aside the same or enlarge the time for filing the answer upon cause shown upon motion and affidavit of the defendant," &c.

In the case of McMicken vs. Perin, 18 How., (U. S.) 507, which was the case of a decree *pro confesso* which had become absolute under the rule, McMicken at a subsequent term of the Circuit Court filed a petition " alleging that he had been deceived by Perin in reference to the prosecution of the bill and had consequently failed to make any appearance or answer, and that he had a meritorious defence and prayed the court to set aside the decree and to allow him to file an answer to the bill." The Circuit Court dismissed the petition. The Supreme Court of the United States citing Cameron vs. McRoberts, 3 Wheat., 591, hold that the Circuit Court had " *no power* " to set aside the decree on motion after the term at which it was rendered.

By reference to the case in 3. Wheat. it will be seen that it was a decree after appearance and answer. This case being cited by the Supreme Court of the United States in the 18th Howard case, a decree *pro confesso* made absolute under the rule, shows that this court regarded a decree thus become "absolute" under the rules of the Circuit Court as to the power of the court, in the same condition as a final decree upon appearance and answer after the term at which it was rendered. We see no escape, therefore, from the conclusion, if the rule announced by the Supreme Court of the United States is to prevail, that the Chancellor had no power to open this decree by motion and affidavits and that there was error in this action here. What the defendants in decree here seek is leave to answer and a hearing upon the merits. If there is any other proceeding in equity but a motion based upon petition and affidavits with an exhibit of the answer, by which such an end can be accomplished, we are not aware of it. After final decree enrolled it may be assailed by original bill for fraud. If there is error in law arising upon the pleadings, proceedings or decrees, then a bill of review without leave will lie, or if there is discovery of material new matter of fact such as the party by the use of reasonable diligence could not have known then a bill of review with leave of the court will lie, or if there is a clerical mistake in a decree or an error arising from any accidental slip or omission the party may by petition have it corrected if his application be before an actual entry of the decree. Rule 87, Chancery Rules. These are the only remedies, and neither can be made available to accomplish the end here sought to be obtained, viz : the opening of the final decree and letting in a defence upon the merits. The consequence of this is, that the cause of the default, unless it be fraud, can never be the subject of inquiry after the final decree entered, although the party may be guilty of

244          SUPREME COURT.

Stribling et ux. v. Hart, Executrix, et als.—Opinion of Court.

no laches, and his failure to set up his rights and urge his defence as fixed by the letter of the rule in the time required may be occasioned by causes beyond his control and by obstacles insuperable in their character and he may have at the same time a good defence to the claim made or a clear right to the subject matter of the controversy. Again, upon appeal, he can only question the legality of the proceedings anterior to his default or urge that the decree is not such as is warranted by the bill. This is a matter of practice controlled by the rules, and a matter of practice subject to regulation and control by a court is not of such an absolute and unchangeable character as the principles of law controlling general subjects of judicial action, such as rights resulting from contract and rights of property. The Supreme Court of the United States, in reaching this conclusion, did it by its simple announcement and by reference to a ruling in the case of a final decree rendered in a case where " all the defendants appeared and answered," and where one of them (Cameron) had filed a bill of review which was then pending, and as to whom, the court said, if he had a distinct interest, so that substantial justice could be done without affecting the other defendants, the jurisdiction of the court might be exercised as to him alone. Thus intimating that the remedy as to other defendants, if the proceedings were assailable for a want of jurisdiction as to them, was by bill of review. The other citation, Brocket vs. Brocket, 2 How., 238, is to the effect that an appeal will not lie from action in a matter which " rests merely in the sound discretion of the court below." If the granting of the motion by the Circuit Court in the case of McMicken vs. Perin, to open the decree, was a matter resting merely in the discretion of that court, the case in 2 Howard was in point, and the ruling was not the subject of an appeal. This rule, however, does not prevail in

this State. See upon this subject Oliver vs. Palmer & Hamilton, a well considered case, reported in 11 Gill & Johnson, 147: 4 Brown Par. Cases, 456. Thus stating the rule announced by the Supreme Court of the United States, we inquire what is the rule in States having like rules to this State upon the subject of decrees based upon defaults of defendants.

In the State of Maryland, the matter of the entry of such decrees is controlled by a statute authorizing a final decree upon default. Maryland Code of 1878, 637. In that State there has been a separate organization of the Court of Chancery since 1777, and its action in such matters is entitle 1 to great respect and consideration. The first case we find upon the subject is Burch vs. Scott, 1 Bland Chy. Reports, 112. In that case there was a decree by default for more than was due, and there were other circumstances explaining the neglect to put in an answer for the space of five months. The defendant filed a bill of peculiar character partaking of the nature of an original bill and of a bill of review, and as stated by the Chancellor, " a bill grounded on the peculiar circumstances." The Chancellor held that he could not have the relief asked which was to set aside the default and to have a hearing upon the merits upon original bill or bill of review, but he did, in view of the hardship of the case, as he regarded it, grant the relief upon it as " a bill grounded on the peculiar circumstances." Upon appeal this decree was reversed upon the ground that the remedy was not upon a bill of this character, and that the circumstances of the case did not justify the opening of the decree. The power, however, to be exercised in a proper case was admitted to exist. This decision of the Court of Appeals of Maryland was affirmed afterwards in opinions showing great research and ability in Oliver vs. Palmer & Hamilton, 11 Gill & John-

son, 147; Herbert vs. Rowles, 30 Md., 280; Pfeltz vs. Pfeltz, 1 Md. Chy., 455; and in a case decided in 1880, Rust vs. Lynch & Jackson, 54 Md., 636.   In this case the rule is stated to be:

"1st. That in a proper case there is no question but that a defendant would be relieved from a decree obtained by default, and when the merits had not been discussed upon petition for the discharge of the enrollment and the vacation of the decree.

" 2d. The discretion to be exercised upon such application must be regulated by law and precedent, and not a mere desire to let in a defence upon the merits."

The statute of New Jersey authorizes a final decree to be entered upon such defaults.   The rule in that State is stated thus: "It has long been settled that an enrollment will be vacated and a decree opened when the decree has been made unjustly against a right or interest that has not been heard or protected when this has been done without the laches or fault of the party who applies."   Brinkerhoff vs. Franklin, 21 N. J., Eq., 336.

The Court of Chancery of Michigan which had a separate organization in 1842, announced the rule to be that "after a decree has been entered on a bill regularly taken as confessed the question of opening it to let in a defence on the merits should be brought before the court by petition accompanied by the answer proposed to be put in." Hart vs. Linsday, Walker's Chy. Reports, 74.

The "Supreme Court of Appeals" of Virginia in Erwin vs. Vint, 6 Mun., 270, sustain the power of the court of original jurisdiction to open the decree upon cause shown.

We deem it unnecessary to make any further extracts from reports of other States covering the question of power. The following citations show that a like rule prevails in the States mentioned: Vermont, Hall & Bingham vs. Lamb,

JUNE TERM, 1883. 247

Stribling et ux. v. Hart, Executrix, et als.—Opinion of Court.

28 Vermont, 85 ; Massachusetts, Thompson vs. Goulding *et al.*, 5 Allen, 82.

This subject is, to some extent, controlled by statutes in New York, Barb. Chy. Prac., 371, but the result of the cases is unquestionably in favor of the power. Under the statutes of New York the practice was subject to the control of the Court of Chancery through rules to be prescribed by it. The rules prevailing in that State at the time of the decisions reported in Johnson & Paige's Chancery Reports, I have been unable to refer to, but unquestionably from the citations made in the decisions of Chancellors Kent and Walworth, they must have conformed to the rules of practice in England, as to the matter of opening decrees of this character. See citations in Wooster vs. Woodhull, 1 John. Chy., 541 ; Lansing vs. McPherson, 3 John. Chy., 425. See also as to the rule in New York, Tripp vs. Vincent, 8 Paige, 180 ; Millspaugh vs. McBride, 7 Paige, 511. The English practice is in some cases to open enrollments of decrees where the merits have not been heard, if there are sufficient circumstances to call for such action. Kemp vs. Squire, 1 Ves., Sr., 205 ; Pickett vs. Loggon, 5 Ves., Jr., 785 ; 2 Smith's Chy. Prac., §§7, 8 and 9. These cases, however, are where the default was by the plaintiff at the hearing and are treated by the English Chancellors as analogous to a non-suit at law. The case in 1 Ves., Sr., 205 is not, in my judgment, a precedent to sustain the conclusions which many of the American courts base upon it, nor can I see how it can properly be cited as a precedent to sustain the view that a decree *pro confesso* after appearance against a defendant after enrollment and expiration of the time fixed to show cause and when it has become absolute, can be opened to let in a defence upon the merits upon motion or petition ; and if there is any English authority which plainly sustains the power or the principle, I cannot find it.

See Ogilvie vs. Herne, 13 Ves., 565. There are a number of cases where enrollments are opened upon cause shown to allow an appeal. 2 Smith's Chy. Prac., §§7, 8, 9, 23, 24. As to the power we are inclined to follow the American practice, for there should be some method in cases of defaults arising from unavoidable circumstances to afford relief even as against an absolute decree. Unless there is some peculiar operation in the rule pronouncing the decree " absolute " after the expiration of the time limited we think the American authorities show that the court has power to relieve in a proper case. A decree absolute is nothing more than a final decree following a decree *nisi causa* when no cause is shown, and there is no difference, and there is no greater solemnity or inviolability attached to it than to any other final decree.

The power, however, is not to be exercised in cases where the decree has been made absolute in the regular course, and where the defendant has been guilty of neglect and has failed to give attention to the process of the court without the existence of controlling and unavoidable circumstances excusing his delay. The entry of such a decree against a party is not to be regarded as a light matter. Under the rule the setting aside of an order taking the bill for confessed will not be allowed except upon cause shown and affidavit. We think the remarks of the Court of Appeals of Maryland (54 Md., 639) upon this subject are eminently proper. That court says the object of the statute (the law authorizing decrees *pro confesso*) was to provide a just and reasonably expeditious mode of obviating the delays and difficulties to which complainants were subjected by the neglect of defendants and their disobedience of the mandates of the court and no construction of the statute should be indulged that would either reward or encourage defendants in their contumacious neglect of the process of the court when duly

JUNE TERM, 1883.                 249

Stribling et ux. v. Hart, Executrix, et als.—Opinion of Court.

served upon them. Decrees are not lightly to be disturbed or vacated after enrollment, though entered upon default of the defendants, and it is only when there are strong and special circumstances shown and the conduct of the party applying is entirely free from well grounded imputation of *laches* or *mala fides* that his application will be entertained and the discretion of the court exercised in his favor, and the discretion to be exercised upon such application must be regulated by law and precedent and not a mere desire to let in a defence upon the merits. It is a mistake to conceive that because a party is in a court of equity, less weighty reasons will excuse his default when he asks to open a decree in equity than is necessary to open a judgment by default at law. In either case the facts produced must show deceit, surprise or irregularity in obtaining the judgment or decree and that the defendant has acted *bona fide* and with reasonable diligence.

What are the facts in this case? On the 28th of April, a paper as follows (omitting title of cause and style of court) was filed. This was considered upon the motion to open the decree:

"Statement of Facts:

" The demurrer interposed in this cause by all the defendants was argued by their counsel in open court at the Spring Term, 1881, and the judge announced in open court from the bench his decree overruling the demurrer. Mr. Frank Fleming, one of the firm of Fleming & Daniel, was present in court and said to W. B. Young, one of the solicitors for complainants: ' We told Colonel McGary that there was nothing in his demurrer.' About ten days before decrees *pro confesso* were entered in this case, W. B. Young, one of the complainants' solicitors, after a conversation with J. E. Hartridge, his associate, upon the subject, started to the office of Fleming & Daniel to notify them that decrees

*pro confesso* would be entered on the next return day against all defendants in default. He, said Young, met Mr. L. I. Fleming, one of said firm, coming out of their office and stopped him in the hall way and said to him, ' Mr. Fleming, does your firm represent Dr. Baldwin in the case of Stribling and wife against the executrix and sureties of O. B. Hart?' He replied, ' Dr. Baldwin said something to us about it, but I don't know whether he wants us to represent him or not; I will see him about it.' Said Young then said, we intend to take a default against all the defendants whose answers are not filed by the next return day. Said Young then went to R. B. Archibald, who had appeared for Catherine Hart, and to D. C. Dawkins, who had appeared for Ozias Budington, and said to them that he would take a default against their clients unless their answers were filed by the next return day. Judge Archibald replied that he was only employed to enter an appearance, and D. C. Dawkins, Esq., replied that he would get the answer of his client filed by that time if possible, but that his client was in Clay county and he was not sure he could get it by that time. The above named solicitors and C. L. Robinson were the only solicitors who had entered an appearance for any of the defendants herein, except Colonel McGary, who had appeared for Dr. Baldwin, but had left the State after his demurrer was overruled. It is agreed that the foregoing statement may be read and shall have the same force as an affidavit duly sworn to.

"FLEMING & DANIEL, Solicitors."

Marvin, administrator of Hoeg's estate, recites that he retained Fleming & Daniel about the third of September, 1880, to defend the suit. He recites the filing of the demurrer, and states that it was understood that if it was overruled on notice to that effect Fleming & Daniel would file further defence. After stating the entry of the final de-

cree he says that he had been informed by his solicitors and so understood that the suit was pending and undetermined, and that he is now informed by his solicitors that they had no knowledge of either said final decree or the decree *pro confesso* until about the day he was told of the execution being in the sheriff's hands. He states that neither he nor his solicitors had notice of the interlocutory or final decree.

The affidavit of Eugene Bigelow, who was the agent of Mrs. Hart, the executrix, relates to her case only. As no appeal is taken from the decree, so far as it relates to her, what her agent states is immaterial. The appeal is from the decree dismissing the bill as to the sureties.

J. J. Daniel, of the firm of Fleming & Daniel, swears that the firm are the general attorneys of the estate of Hoeg; that in September, 1880, he was handed a subpœna issued in this case; that he gave directions to Marvin, the administrator, to procure certain evidence in the case and saw John E. Hartridge, solicitor for the complainants, and W. G. McGary, solicitor for the defendant, A. S. Baldwin; that McGary proposed to him to file a demurrer to the bill; that he, Daniel, expressed a want of confidence in the demurrer, but upon McGary's insisting it was understood that a demurrer should be interposed for all of the defendants, and that if said demurrer was overruled, Fleming & Daniel would then, on notice to that effect, file their plea or answer as the case might be, and that this was spoken with the said Hartridge as well as the said McGary; that the demurrer stood over until May Term, 1881; that it was then argued and overruled by the court; that at the time of said argument he, Daniel, was very sick and had no knowledge whatever that the demurrer had been submitted to the court; that he continued in such health during the summer and until late in the fall of 1881 as to be almost unfit for busi-

252 SUPREME COURT.

Stribling et ux. v. Hart, Executrix, et als.—Opinion of Court.

ness, and during a great part of the time was not in his office nor in the city; that McGary, as he afterwards learned, left the city in the latter part of May (1881) without saying a word about the case to his client or to counsel or turning over the papers to any one; that he continued under the conviction that the suit was standing on the demurrer until a few days ago when he was informed that a final decree had been entered on the 11th of March, 1882, and that an execution was in the hands of the sheriff; that he was confirmed in this opinion by a conversation with John E. Hartridge, leading counsel for the complainants, some time in the early part of this year, (1882) at which affiant mentioned the suit to said Hartridge and spoke of the demurrer, and stated that as soon as the demurrer was decided, if the decision should be adverse, there would be a defence made by Fleming & Daniel to the merits; that said Hartridge said nothing whatever about the demurrer having been argued and decided, but laughingly spoke of McGary's efforts to bring the matter to a hearing, nor did said Hartridge say anything of decrees *pro confesso* having been entered against the defendants and that said decrees had been then entered, and that by reason of this conversation affiant was more strongly impressed that the case still stood on the demurrer and that notice would be given. Affiant says further that he knows that the defendant A. S. Baldwin thought that the cause was standing on the demurrer until a few days ago.

Defendant, A. S. Baldwin, swears that he entered his appearance in person on the 24th September, 1880, and retained W. L. McGary to defend his interests; that about the first of November, 1880, he was advised that his attorney had filed a demurrer; that during the winter of 1880 and 1881, he had frequent conversations with his solicitor,

JUNE TERM, 1883.    253

Scribling et ux. v. Hart, Executrix, et als.—Opinion of Court.

who seemed confident of the success of his demurrer, but
stated that he had not been able to bring it to a hearing;
that in the latter part of the month of May, 1881, his at-
torney left Jacksonville, leaving affiant still under the im-
pression that the demurrer had not been argued; that affi-
ant knew that nothing was required before said demurrer
could be heard and rested quiet under the assurance that if
the matter was brought up in the absence of his solicitor
he would be personally notified of such fact. He then
states his recent information as to the proceedings resulting
in the decree and execution, and that he had no notice of
any of them.

John E. Hartridge, of counsel for complainants, swears
that when the rule day arrived for taking a decree *pro con-
fesso*, and long subsequent to the time when the plea or an-
swer of Baldwin and ———; that he was in the Clerk's
office of Duval county when Mr. J. M. Barrs spoke to him
about the case and asked him if he was going to take a de-
fault; that on receiving an affirmative reply Mr. Barrs re-
quested that I defer doing so as he thought the firm of
Fleming & Daniel represented some of the defendants;
that he consented and did not enter the decree *pro confesso*
of that day; that a few weeks after this conversation he
called personally upon Mr. L. I. Fleming of Fleming &
Daniel, and asked what he was going to do, if he was going
to file any defence in this case for Dr. A. S. Baldwin, and
he replied, "I do not know whether we represent him or
not, but I will see," so ——— a while after, the lapse of
two or three weeks more, I again called on Mr. L. I. Flem-
ing and asked what he was going to do; that he replied
"well, I don't think we represent Dr. Baldwin;" that
nothing was said as to any other defendants; that he did
not know who they represented, supposed it was Dr. A. S.
Baldwin; that the case was mentioned as the Stribling

case, and the question of defence asked as to A. S. Baldwin, and that he then communicated these facts to his associate counsel, W. B. Young.

The blanks in the above affidavit are as they occur in the copy of the record made by the clerk.

J. M. Barrs: That he has no recollection, whatever, either of the meeting or the conversation referred to in the above affidavit of John E. Hartridge. He states that for many months since he has been under the impression that the cause was standing upon the demurrer, and that he has all this time known that Colonel Daniel, of the firm of Fleming & Daniel, had a plea drafted to file in this cause as soon as he was informed of the overruling of the demurrer; that he was present at a conversation in the office of Fleming & Daniel between Colonel J. J. Daniel and John E. Hartridge within the last ninety days, as he believes, in which the demurrer was referred to, and that nothing was said which gave him to understand that the demurrer had been argued or disposed of and that he knew of nothing to remove this impression until recently advised that an execution had issued.

So far as the defendants, Baldwin and Budington, are concerned-the foregoing statement of facts and affidavits taken with the case as we have narrated it, discloses no good cause to open the decree. After one default of Budington was excused he is guilty of another. His first default was opened by consent. He files his answer. It is excepted to. The exceptions are sustained and he is allowed time to file a proper answer. This he fails to do, and even after notice to his solicitor by the solicitor of the complainants of intention to enter this second default, no attention is paid to it, so far as this record discloses.

Defendant, Baldwin, states in his affidavit that his counsel, McGary, left Jacksonville in the latter part of the

month of May, 1881; that about the first of November, 1880, he was advised that his counsel had filed a demurrer; that he had frequent conversations with his counsel in 1880 and 1881, who expressed confidence in his demurrer, but stated that he had not been able to bring it to a hearing. When McGary left Jacksonville ordinary diligence and attention to business required at the hands of this defendant, that he should pay at least some attention to this suit, which he knew was pending. Instead of this he does not give it any attention until after an execution is issued on the 10th of April, 1882, a period of ten months. For this want of attention no unavoidable circumstance and no cause is shown except that he thought he was entitled to personal notice if there was any action taken in the absence of his counsel, and alleges that he had no notice of any of the proceedings resulting in the final decree. He had been summoned, had entered his appearance, and upon the departure of his counsel it was his duty to employ other counsel, or at least *to do something* in the premises. Nor was he entitled to any notice of the overruling of his own demurrer or the intended entry of an order taking the bill as confessed against him. If such laches and want of diligence and attention as is here disclosed is to be excused for want of notice, then the rules which do not require it are practically repealed in all cases, and decrees absolute and final amount to nothing. "If a decree could be vacated upon such ground as is here alleged by the defendant there would be little or no stability in decrees obtained upon *ex parte* proceedings authorized by the rule, and instead of being a means of relief against the neglect and delay of defendants, the rule would furnish the ready mode of protracting the litigation beyond the time required to reach final hearing and decree in the ordinary course of proceedings." Rust vs. Lynch & Jackson, 54 Md., 638.

In a similar case, Carpenter vs. Muchmore, 2 McCarter, 15 N. J. Eq., 124, the Chancellor says: " It was his duty to inquire as to his rights.   If he negligently relied upon his mistaken impressions he incurred the hazard of his default in not answering.   Almost every defendant against whom legal proceedings are instituted might interpose the same excuse for his laches.   It constitutes no surprise in the legal sense of the term."

As to the case of Marvin, Administrator of H. H. Hoëg: The proceedings of the plaintiffs here were in all respects regular.   In fact they gave notice to Mr. L. I. Fleming, one of the firm of Fleming & Daniel, (Marvin's counsel,) that it was their purpose to enter " a default against all the defendants whose answers are not filed by the next return day."   Could the plaintiffs do more ?   It appears that neither Marvin nor those who represented him paid any attention to this notice, and we do not see any reasonable ground upon which to open the decree against him.   We do not think that the fact that one of the plaintiffs' counsel is present at a conversation between McGary and a member of the firm representing Marvin, administrator, in which it was understood that a demurrer should be interposed for all of the defendants, and that if the demurrer was overruled, they would, upon notice to that effect, file their plea or answer, fixes an obligation upon plaintiffs' counsel to give defendants' counsel notice of the overruling of their own demurrer.   To bind him to give such notice he should have so expressly agreed.   The fair conclusion here would appear to be that as Fleming & Daniel had no confidence in the demurrer and McGary had, that he, McGary, was to manage it and give notice of the result.

Again, the demurrer here was overruled in open court in the spring of 1881, one of the members of the firm of Flem-

ing & Daniel being present and making a remark at the time, which shows that the action of the court was known to him.  While it is true that Colonel Daniel was sick at this time, and that he continued in such health as to be almost unfit for business, and during a great part of the time not in his office or in the city until late in the fall of 1881, yet the default here was not entered until November, 1881, and the final decree did not become absolute until after March, 1882.  So far as the conversation with Hartridge is concerned, he was, under the circumstances, under no obligation to advise that the demurrer was overruled, or that he had entered or intended to enter a decree *pro confesso*. He was silent as to any decision and did no act to mislead any person.  A person is not bound to communicate his intention to take a decree *pro confesso*, or that he has taken one because the other party advises him that it is his purpose to file an answer.  This in principle is the decision of Lord Chancellor Lyndhurst in Barnes vs. Wilson, 5 Eng. Chy., 486, and even if the firm of Fleming & Daniel were entitled to notice, certainly the notice given by the plaintiffs' counsel to one of the firm, of intention to take the bill for confessed aga.nst all the defendants who had not filed answers, was all that could be required.

Again, Fleming & Daniel entered their appearance for Marvin on the 16th of September, 1881, which was *after the demurrer was overruled*.  They had simply to open the papers to discover the fact.  In this case the plaintiffs did more than the law required.  Indeed they seem to have been anxious to give all of the defendants an opportunity to be heard, postponing for months the entry of the order taking the bill for confessed, which they could have entered on the rule day succeeding the overruling of the demurrer which was " interposed in this cause by all of the defendants," and even then giving notice (which was not required)

of intention to enter the order taking the bill for confessed. We do not think sufficient cause was shown to open this decree. We reach this conclusion with regret, but if we are to have rules they must be enforced.

Those who seek the courts for redress of wrongs or the defense of rights must learn that the final adjudication of a court either of law or equity is a matter of serious consequence, and after an appearance a reasonable degree of diligence and attention must be required. A brief commentary on some of the cases upon this subject is not deemed improper. Kemp vs. Squire, 1 Ves. Sr., 205 ; Pickett vs. Loggon, 5 Ves., 705. These were cases where the bill was dismissed for default of the plaintiffs. They are not decrees *pro confesso* where the practice is controlled by established rules of which parties must take notice. Lord Loughborough assimilates the case to that of a non-suit at law. Lord Raymond, 1308 ; 3 Wil., 149. The first case, 1 Ves. Sr., 205, is based upon two cases, one of default of plaintiff to hear judgment, the other of a decree dismissing an original bill and taking a cross bill for confessed. The application to set aside in this case was based upon irregularity and " bad state of mind " of plaintiff. Lord Hardwicke in Kemp vs. Squire stated that the case was " very near to that " of the case of a plaintiff remaining an infant " till " after the hearing of the cause. Of this case (Kemp vs. Squire) it is said in a note to §8, 2 Smith's Chy. Prac., p. 7, " that it appears that the solicitor for the infant plaintiff neglected to instruct counsel to appear on the hearing, and there appear strong reasons to suppose that he acted collusively. See Dick, 131." Under the English practice there was a difference between decree taken upon a bill *pro confesso* after an appearance as in this case and those under the statute of 5 Geo. II., Chap. 25. In the case of Ogilvie vs. Herne, 13 Ves., 565, it is held that a "·decree

taken *pro confesso* in the ordinary course after appearance not under the statute can be impeached as any other decree only directly by bill of review or a bill to set it aside for fraud not collaterally by an original suit seeking a decree inconsistent with it." See, as to this case and other cases upon the subject, note 3 to Attorney-General vs. Young, 3 Ves., 209; Geary vs. Sheridan, 8 Ves., 191; Williams vs. Thompson, 2 Bro. Chy. Repts., 280; Buckman vs. Peck, 3 John. Chy., 414. This case is so reported as not to be clearly understood. It seems that a decree by default, whether final or interlocutory does not appear, was entered in June; that the answer was filed in the same month, but not in time and the motion was grounded upon merits, and that " the delay in filing the answer arose from *unavoidable circumstances*." The Chancellor granted the motion upon payment of costs of the default and subsequent proceeding. See also Lansing vs. McPherson, 3 John., 424, where the application was denied. Tripp vs. Vincent, 8 Paige, 179. The last case was that of decree against a mortgagor, and two of his judgment creditors, the judgment being joint. There was no service as to one of the judgment creditors, and the other had ascertained by the examination of the complainant in another suit that his mortgage was fraudulent or but a part of it was due. In the case of Wells vs. Crugar, 5 Paige, 164, the defendant had not appeared, resided out of the State, and he had been served during a temporary visit and the decree was had without notice to him or his agent. The case of Millspaugh vs. McBride, 7 Paige, 512, amounts almost to a decision, according to its language and headnote, that a simple showing of merits is enough to call for the favorable exercise of this power, a doctrine which we do not propose to establish in this State. We do not think, however, that the facts in the case justify the broad language of the Chancellor. There was no laches

in the party. He stated his case to his counsel and his counsel advised him that it was useless to attempt to defend upon the grounds given. Nor can it be said that there was neglect in the counsel because he acted upon his client's representation of their case. The failure arose out of a very natural misapprehension upon his part as to the case of his clients and his clients' misapprehension as to the nature of the suit. We deem it unnecessary to continue comment upon the cases. The subject will be found discussed further in the following cases: Burch vs. Scott, 1 Gill & John., 426; Oliver vs. Palmer, 11 Gill & Johnson, 149; Hart vs. Lindsay, Walker's Chy. Repts., 72; Carpenter vs. Muchmore, 15 N. J. Eq., 123; Miller vs. Hild & Wife, 3 Stockton, 25; Brinkerhoff vs. Franklin, 21 N. J. Eq., 336; Disbrow vs. Johnson, 18 N. J. Eq., 37; Totten vs. Nance, 3 Tenn. Chy., 264; McMickin's Ex'rs vs. Perin, 22 How., 282. In Illinois and Mississippi the matter of opening such a decree is controlled by statute. Collins vs. Crotty, 65 Ill., 545; Norton vs. Hixon, 25 Ill., 457; McGowan vs. James, 12 S. & M., 445. Erwin vs. Vint, 6 Munf., 267, gives the rule in Virginia.

Nor do we think that the case is one of such hardships as to imperatively demand a favorable exercise of the discretion. The question is whether a ward shall realize a sum admitted to be due her by her guardian, whose estate is insolvent, or whether sureties upon his bond shall pay it to her, the defence being:

1st. The taking by the ward nine months after she became of age of a promissory note which extended the time of payment of the sum of money found due upon an accounting between the guardian and his ward twelve months.

2d. Laches in not making the demand for nine years

after the giving of the note and after the estate of the guardian was insolvent.

This defence, except the matter of laches is, as remarked by the respondents in their brief, the claim of "a technical release." There was, however, no release, and the authorities cited upon that subject are not in point. See Part 2, Vol. 2, Leading Cases in Eq., 996, 997.

As to the facts: It is apparent that all the accounting done here was by the guardian. The ward simply assented to what the guardian said. It appears that from the time she was ten years of age she resided with her guardian, who was her uncle, and that even after accepting his note for the same, for which he offered to give it and for which he drew the receipt, she lived in his family until his death, which occurred about two years after she signed the receipt and the guardian gave her the note. Up to this time and beyond it the influence of her guardian and uncle continued, as the evidence shows.

She was married in 1879, and this suit was brought in 1880. Whether the simple acceptance of this note under the circumstances and the delay will release the sureties upon the bond is the question, a question in which I do not think the accepting of the note or the giving of the receipt under the circumstances should have any influence.

She acted without any advice, in fact, without any examination of accounts and simply did what she was told to do by one who had occupied the place of a parent from the time she was ten years of age, the transaction occurring in a room in her uncle's house, no one being present except herself, her uncle and her aunt, the guardian saying at the time that he "would advise with her and whenever she wanted it he was willing and ready to give it." As to the question of laches independent of the matter of giving

time affecting the liability of the surety, see leading cases in Equity, 1,000, 1,001.

All of the proceedings in this case subsequent to the final decree of the 11th of March, 1882, except the issuing of process to enforce it, we think should be set aside, and that decree should stand.

The order of the 2d day of May, A. D. 1882, and the final decree of the 22d of March, 1883, are reversed, and the final decree absolute of the 11th of March, A. D. 1882, will stand as the final decree of the Circuit Court, subject to such proceedings as may be appropriate for the correction of any error therein, if error there be.